(No. 35319.—

THE VILLAGE OF APPLE RIVER *et al.,* Appellees, *vs.* ILLINOIS COMMERCE COMMISSION *et al.,* Appellants.

*Opinion filed January 22, 1960—Rehearing denied March 28, 1960.*

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and HARRY R. BEGLEY, Special Assistant Attorney General, of Chicago, for appellant Illinois Commerce Commission; and HOLLAND & BANIGAN, of Chicago, and PFEIFER, FIXMER AND GASAWAY, of Springfield, (JESSE J. HOLLAND, FRANK M. PFEIFER, and CHARLES A. STERN, of counsel,) for appellant Northwestern Telephone Company.

HAROLD R. NETTLES, of Freeport, and NACK & NACK, of Galena, (LOUIS A. NACK, of counsel,) for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

In May of 1957 Northwestern Telephone Company filed with the Illinois Commerce Commission revised rate schedules in which it proposed rate increases in the 16 telephone exchanges which it operates in Stephenson, Jo Daviess, Ogle and Whiteside counties. The increased rates as proposed were to be effective June 30, 1957.

Thereafter the Illinois Commerce Commission determined that the reasonableness of the rates should be further investigated, and suspended the effective date of the rate increase to October 28, 1957. Thereafter, by action of the Commission, this suspension was extended until April 28, 1958.

Hearings on the rate increase began before a Commission examiner in July of 1957. Objections to the rate increase were made by communities in which the exchanges were located with the exception of one switching station. In addition, objections were made by the board of supervisors of Stephenson and Jo Daviess counties.

Commencing in July of 1957, evidence was taken and these hearings ended in December of that year. In February

of 1958 the Commission entered an order finding that the proposed increase in rates was reasonable and that the existing rates were unjust and unreasonable. By the terms of its order the increased rates were to become effective April 1, 1958.

The objectors' petition for a rehearing before the Commerce Commission was denied, and thereafter the objectors appealed the order of the Commission to the circuit court of Stephenson County. That court, by its order entered February 24, 1959, reversed and set aside the order of the Commission. This appeal by the Commission and by the telephone company is from the action of the circuit court.

During the course of the proceedings below it was developed that the Commission, in a prior order granting a rate increase, had ordered the telephone company to complete the reconstruction of one exchange and to make certain maintenance and construction changes. The company was further ordered to "de-load its rural lines out of each of the exchanges to not more than 10 subscribers per line within six months from the date of the service of this order." The Commission, by the prior order which had been entered in December of 1954, provided that the telephone company should make progress reports on the changes and the de-loading. By the terms of its order these reports were to have been filed every 90 days.

The evidence was that the 1954 order, particularly with reference to de-loading rural lines, had not been complied with and, in fact, so far as this record is concerned, was not completed as of the date of the 1958 order allowing an additional rate increase.

Indeed, the evidence in this case is to the effect that there were many lines with 15 or more subscribers as of the end of 1957, although the company had de-loaded some 130 of the 240 rural lines ordered to be de-loaded in 1954.

In other respects the evidence is most convincing that the telephone service afforded subscribers in some of the

rural areas was not all that could be reasonably expected.

The circuit court, in its opinion, took note of these deficiencies and concluded that the order of the Commission allowing a further .increase in rates was unreasonable. In fact, the reason given by the circuit court for its order clearly was the failure of the company to comply with the 1954 order as well as the inadequacy of the service. In the course of its opinion filed with the order the circuit court acknowledged that the company did produce figures and statistical data sufficient to prove anything required but concluded that any relief the company might seek from the Commission would and should be denied in that the company had failed to comply with the earlier 1954 order.

In view of the present state of the record here, we deem it unnecessary to review the sufficiency of the evidence to sustain the order of the Commission which is declared by the legislature to be *prima facie* reasonable. The function of the courts upon a review of an order of the Illinois Commerce Commission is to review the order to see whether the order infringes on any substantial rights of the parties and, on appeal, the circuit court may remand the cause to the Commission if the court concludes that the Commission improperly failed to receive evidence that was material to the inquiry, or may affirm the order if it is determined to be lawful and reasonable. If the court determines that the findings of the Commission are supported by the evidence and are not clearly against the manifest weight of the evidence, the order of the Commission is to be affirmed. *Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301; *Chicago Junction Railway Co.* v. *Commerce Com.* 412 Ill. 579.

In the last cited case we stated the rule to be: "The scope of review allowed in appeals from final orders of the Illinois Commerce Commission is limited. Authority to review is derived from the Public Utilities Act (Ill. Rev. Stat. 1951, chap. 111⅔, par. 72,) section 68 of which pro-

vides that the findings and conclusions of the commission on questions of fact are to be held *prima facie* to be true, and the commision's order shall not be set aside unless it clearly appears that the finding of the commission was against the manifest weight of the evidence or that the order was without the jurisdiction of the commission."

On review, the circuit court has neither the power nor the duty to conduct a *de novo* hearing, nor does this court, and the wisdom of the decision of the Commission is not open to inquiry. Indeed, it has long been established that in matters relating to services and rates of utilities technical data and expert opinion, as well as complex technological and scientific data, make it essential that the matter be considered by a tribunal that is itself capable of passing upon complex data. (*Commerce Com.* v. *Omphghent Township,* 326 Ill. 65.) The need for the Commission being obvious, it has long been established that the decision of the Commission is entitled to great weight as being the judgment of a tribunal appointed by law and informed by experience. *Public Utilities Com.* v. *Springfield Gas and Electric Co.* 291 Ill. 209.

The Illinois Commerce Commission exists for the function of maintaining a balance between the rates charged by utilities and the services performed. It is to determine that the rates are just and reasonable and that the services are adequate. In order to perform its public function the legislature has given the Commerce Commission very broad powers, indeed. The Commission, on its own initiative, can promulgate orders, rules or regulations fixing adequate service standards and requiring adequate facilities. (Ill. Rev. Stat. 1957, chap. 111⅔, par. 49.) The Commission has the power to order additions, repairs, improvements and modifications in services and facilities by section 50 of the cited statute, and section 54 gives it the further power to fix standards of service. Other related sections of the same statute provide for interested individuals or communities

to make complaint to the Commission and the Commission is given access to the courts for the enforcement of its properly promulgated rules or orders. Noncompliance with a valid order subjects a utility to penalties as provided in the act.

The circuit court determined that the Commission had not only the additional power but also the duty to deny an application for a rate increase if the applicant was at the time of the application not then in compliance with a prior order of the Commission with reference to service offered. The question that we here decide, therefore, is whether or not the circuit court was correct in holding that the Commission, as a matter of law, was required to withhold the rate increase pending completion of a service improvement directed to be made at an earlier date.

We find no case in this State, nor has any been suggested, that is directly decisive of this point. Decisions in other jurisdictions, however, in considering this problem, are persuasive. In the case of *Elyria Telephone Co.* v. *Public Utilities Commission,* 158 Ohio St. 441, 110 N.E.2d 59, the Supreme Court of Ohio held that its Commission committed reversible error in conditioning a rate increase upon the improvement of service and facilities. The court there reasoned that a public utility commission may not so act as to confiscate the property of a utility and where it had determined that adequate rates do not exist an order granting an increase in those rates by suspending the effective date thereof until such time as certain facilities and improvements are provided has the effect of hamstringing the utility and, in fact, negates the prospect that the improvements and needed facilities could be acquired. Similarly, the Supreme Court of Florida, in *Florida Telephone Corp.* v. *Carter,* (1954) 70 So.2d 508, determined that its utility commission had no authority to deny an increase in rates as a penalty for poor or inadequate service. These cases recognize that, although the approval of proposed rate in-

creases is necessarily related to the services offered, a rate that is otherwise just and reasonable may be a necessary condition precedent to adequate service.

The power of the Illinois Commerce Commission to approve rates, in addition to the other powers previously enumerated, makes it clear, it seems to us, that the Commission need not deny a reasonable rate increase pending service improvement. The rate increase relates to a reasonable return on the investment of the utility and the action of the circuit court in reversing the order for increase for the assigned reason that the telephone company had not improved its service as required by the prior order was error. Indeed, compliance with the prior order is material to this inquiry only if there is any matter in connection with that prior order that relates to the existing valuation of the company's property in order to determine whether or not the proposed rate increase results in a fair return, and the record on review in the circuit court should have been the subject of judicial review for that limited purpose. The responsibility for seeing to it that the utility provides adequate service rests with the Commission and it seems clear to us that had the Commission exercised the powers that it has by law to enforce its own prior order noncompliance with the earlier order could not have arisen in the instant proceeding. The prior order was not the subject of an appeal to the courts, nor does it appear that extensions of time were granted for compliance. Under those circumstances, the record is devoid of any explanation as to why the Illinois Commerce Commission did not pursue the matter and compel compliance with its earlier order. If the Commission is of the opinion that there is an inadequacy of remedy available to it, then, presumably, appropriate legislative recommendations would be made. If the remedies are adequate the record fails to establish any reason for the failure of the Commission to use those remedies. In any event, however, noncompliance with the prior order

is not itself an adequate basis for determining that the present application for a rate increase should be denied. The judgment of the circuit court of Stephenson County is reversed and the order of the commerce commission is confirmed.

*Judgment reversed; order of commission confirmed.*