(No. 36392.—

The Village of Maywood, Appellant, *vs.* Illinois Commerce Commission *et al.,* Appellees.

*Opinion filed November 30, 1961.*

ANCEL, SIEGEL & STONESIFER, of Chicago, (LOUIS ANCEL and JACK M. SIEGEL, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (EDWARD V. HANRAHAN, Assistant Attorney General, of counsel,) for appellee the Illinois Commerce Commission, and ISHAM, LINCOLN & BEALE, of Chicago, (CHARLES A. BANE, RICHARD G. FERGUSON, and ROBERT WOOD TULLIS, of counsel,) for appellee the Northern Illinois Gas Company.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This case began in 1955 when the Northern Illinois Gas Company, hereinafter referred to as the company, filed a proposed rate change with the Commerce Commission. The rate was suspended pending a hearing. The village of Maywood, hereinafter referred to as Maywood, intervened, and following hearings the Commission entered an order finding that the proposed rate change was just and reasonable and should become effective. On appeal to the circuit court of Cook County, the order of the Commission was affirmed. Maywood has appealed directly to this court to review the order of the circuit court.

The rate change granted originally involved a 3% increase in the gas rates for consumers in the villages of Maywood, Bellwood and Melrose Park, which increase was requested to reimburse the company for the expense of franchise payments made to these villages. The company was operating in these villages under franchise ordinances providing for payment by the company to the villages of an annual franchise payment amounting to 3% of the gross receipts of the company from its operations in said villages. While the present proceedings were pending before the Commission, the company made lump sum payments to the municipalities of Bellwood and Melrose Park, which had the effect of eliminating the annual franchise payments to these municipalities. The company then withdrew its original rate schedule and filed a revised schedule applicable only to the village of Maywood. This schedule continued to call for an additional charge of 3% to be assessed against the users of gas in the village of Maywood to compensate the company for the annual 3% franchise payment which it was compelled to make to the village under the terms of the franchise ordinance.

The evidence before the Commission showed that the franchise ordinance had been adopted by Maywood in 1900, prior to the creation of a regulatory commission to supervise the service rendered and the rates charged by utility companies. At that time there was considerable competition on the part of utility companies to secure long-term franchises for providing gas service within municipalities, and, in order to obtain the right to operate in Maywood, the predecessor of the present company accepted the franchise ordinance, and payments under the ordinance have been made since 1922. It appeared from the evidence that it was not the usual practice to include such percentage provisions in franchise ordinances although there were several instances where this was done. In the early years during which the company operated under this ordinance, the fran-

chise payments were quite small, but in recent years, due to the increased use of gas, the amount of the franchise payments has greatly increased, so that in 1955, at the time of the hearings before the Commission, the payment to Maywood amounted to almost $25,000 annually. The company's gross receipts from all of its operations in the entire area which it served, amounted to more than $67,000,000. The annual payment to Maywood, therefore, represented a very small fraction of the total amount of revenue derived from the company's entire operation. A witness for the company testified at the hearing that if the proposed rate schedule was approved and the company was permitted to recapture this payment, the additional expense incident to the receipt of the income, such as the utility tax and the Federal income tax, would reduce the amount thus recaptured by more than 50%. This testimony referred to the amounts paid to the three villages which were originally involved, since the hearing was held prior to the lump sum payments to the other villages, and that testimony showed that the net amount of revenue which the company would derive from the increased rate, if applied to consumers in all three municipalities, would amount to only about $\frac{1}{40}$th of 1% of the company's entire revenue.

The company relies upon the case of *City of Elmhurst v. Western United Gas and Electric Co.* 363 Ill. 144. In that case, a rate schedule previously had been approved by the Commission which authorized the company to add to its uniform charges for gas service in certain cities a percentage differential sufficient to reimburse the company for the annual franchise payments made to the municipalities. The city of Elmhurst, one of the cities which collected franchise payments from the company, filed a complaint with the Commerce Commission in which it charged that the rate was unjust and discriminatory insofar as it permitted the recapture of the franchise payments from users

of gas in the communities to which franchise payments were made. We held that franchise payments were properly chargeable as an element of the cost of operation which should be borne by the consumer of the utility's product, and held that it would be unjust to spread the burden of an annual franchise payment over the entire area served by the utility. We specifically stated that such franchise payments should be borne by the company's consumers residing within the municipality which received the annual payment, and held that a rate providing for such payment was not unjust or discriminatory.

In the present case, Maywood seeks to distinguish the *Elmhurst* case by arguing that in that case the Commission had previously approved a rate permitting recapture of the franchise payments, and that therefore it should be presumed that the uniform rate applicable to cities other than the cities to which franchise payments were made was lower than it would have been otherwise, since the Commission must have taken into account the increased revenue derived by the company from the recapture of the franchise payments from certain municipalities. In our opinion this assumption is unjustified. Rate making is not a scientifically exact procedure, and the fixing of a fair and reasonable rate involves a question of sound business judgment rather than a mathematical or legal formula. (*Iowa-Illinois Gas and Electric Co.* v. *Commerce Com.* 19 Ill.2d 436; *Public Utilities Com.* v. *Springfield Gas and Electric Co.* 291 Ill. 209.) The exact effect of minor items of expense and revenue such as those involved in the franchise payments in the *Elmhurst* case and in the present case may not be discernible in the ultimate rate structure of the company. It is settled that it is within the power of the Commission to authorize a change in rates without a full hearing and examination to determine a fair rate on the fair value of the utility's property. (*Produce Terminal Corp.* v. *Commerce Com. ex rel. Peoples Gas Light*

*and Coke Co.* 414 Ill. 582, 595.) It was therefore not necessary in the present case to re-examine the entire rate structure of the company.

Maywood also contends that since the *Elmhurst* case originated as a complaint proceding, it must be distinguished from the present case which originated by the filing of a rate change by the company. We are unable to agree. If a rate is unjust and discriminatory, it may be corrected by a rate hearing initiated by the company as well as in a complaint proceeding initiated by a consumer.

Maywood argues that the amount involved here is so inconsequential that no adjustment should be made. We can not subscribe to a doctrine which would hold that discrimination cannot be corrected because it is small in amount. The issue in such cases is whether there is unjust discrimination, regardless of amount. Our holding in *Elmhurst* makes it clear that a rate is unjust when it does not impose the burden of franchise payments on users in the community which receives the payment.

Finally, Maywood contends that the *Elmhurst* case held only that a rate schedule permitting recapture was not discriminatory and did not hold that a schedule not providing for such recapture was discriminatory. Because of the manner in which the question was presented in *Elmhurst,* the precise holding of that case was limited to a holding that the rate structure involved therein was not discriminatory. However, the necessary implications of *Elmhurst* and the language used in that case make it clear that the burden of franchise payments should be borne by communities deriving the benefit of such payments. The case held that recapture of the payments from the consumers in such communities was proper. Since that is precisely what the rate in the present case accomplishes, we consider *Elmhurst* to be controlling here.

Maywood has cited cases from other jurisdictions and has referred to decisions of regulatory bodies in other

States. Since in our opinion this case is governed by our holding in the *Elmhurst* case, and since we are satisfied that our holding in that case was correct, we do not find it necessary to discuss the authorities from other jurisdictions.

There was little, if any, dispute as to the facts in this case, and the findings of the Commission are amply supported by the evidence. It is the rule that orders of the Commerce Commission are presumed to be valid and can be set aside on judicial review only if the findings are manifestly against the weight of the evidence or the order is directly contrary to some established rule of law. *Village of Apple River* v. *Commerce Com.* 18 Ill.2d 518; *Commerce Com. ex rel. Lumaghi Coal Co.* v. *Chicago and Eastern Illinois Railway Co.* 332 Ill. 243.

The order of the Commission was in accord with the established rule of law as set forth in the *Elmhurst* case. The order of the circuit court of Cook County affirming the order of the Commission is therefore affirmed.

*Order affirmed.*