MONARCH GAS COMPANY, Plaintiff-Appellee, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellant.

Fifth District  No. 77-7

Opinion filed August 2, 1977.—Rehearing denied September 2, 1977.

William J. Scott, Attorney General, of Chicago (Hercules F. Bolos, Rodney C. Howard, and Mary C. Ubatuba, Assistant Attorneys General, of counsel), for appellant.

Frank M. Pfeifer, of Springfield, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:
This is an appeal from an order of the circuit court of Fayette County reversing an order of the Illinois Commerce Commission fixing rates for the Monarch Gas Company.

On November 21, 1974, Monarch Gas Company filed proposed tariff revisions for its general service area which would increase revenue by approximately $58,000 per year. Pursuant to statutory authority, the Illinois Commerce Commission suspended the increase until April 20, 1975, and later extended the suspension until September 25, 1975. On September 25, 1975, the Commission entered its order granting a portion of the proposed tariff increase. The increase raised the rate of return on Monarch's original investment minus depreciation to 8.75%.

The Commission found that in 1970 Monarch had elected, pursuant to Subchapter S of the Internal Revenue Code (26 USC §1371 *et seq.*) to be taxed through its stockholders on the taxable income of the corporation, in lieu of paying the corporate tax. As Monarch itself paid no income tax, the Commission rejected the inclusion of the amount the corporation would have paid in computing the operational expenses. Pursuant to section 68 of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 72), this portion of the Commission's order was appealed to the circuit court. The Commission now appeals from the reversal of its order by the Circuit Court.

In this appeal the Commission notes that judicial review of its orders is limited by statute, and contends that the evidence fully supports its order. Monarch contends that the rejection of income tax expenditures frustrates the purpose of the tax code and is thereby unlawful. Monarch also urges that the failure to include income tax expenditures as an operating expense lowers the rate of return to 6.19%, below the 8.75% rate the Commission allowed. Finally, Monarch argues that the Commission is estopped from rejecting its claimed expense by its failure to object to the income tax expenses in the annual report by Monarch to the Commission following its Subchapter S election in 1970.

■■ The authority to review and the scope of review of Illinois Commerce Commission orders derives from section 68 of the Public Utilities Act (Ill. Rev. Stat., ch. 111 2/3, par. 72). The findings and conclusions of the Commission are held to be prima facie true and will not be set aside unless against the manifest weight of the evidence. In review, the courts are limited to a determination of (1) whether the Commission acted within the scope of its authority, (2) whether it made findings in support of its decision, (3) whether the findings have substantial support in the record, and (4) whether constitutional rights

have been violated. (*Illinois Bell Telephone Co. v. Illinois Commerce Com.*, 55 Ill. 2d 461, 469, 303 N.E.2d 364, 369; *Sunset Trails Water Co. v. Illinois Commerce Com.*, 7 Ill. App. 3d 449, 456, 287 N.E.2d 736, 740.) An order of the Commission is presumed to be valid, and will not be set aside unless it is against the manifest weight of the evidence or clearly contrary to a rule of law. *Village of Maywood v. Illinois Commerce Com.*, 23 Ill. 2d 447, 453, 178 N.E.2d 345, 348; *Illinois Central R.R. Co. v. Illinois Commerce Com.*, 387 Ill. 256, 275, 56 N.E.2d 432, 441.

■■ The determination of rates is historically a legislative, not a judicial, function. (*Illinois Central R.R. Co. v. Illinois Commerce Com.*, 387 Ill. 256, 275, 56 N.E.2d 432, 440; *Illinois Bell Telephone Co. v. Illinois Commerce Com.*, 414 Ill. 275, 288, 111 N.E.2d 329, 336.) An order of the Commission is presumed valid and the decision of the Commission is entitled to great weight as a tribunal appointed by law and informed by experience. (*Iowa-Illinois Gas & Electric Co. v. Illinois Commerce Com.*, 19 Ill. 2d 436, 442, 167 N.E.2d 414, 417; *Village of Apple River v. Illinois Commerce Com.*, 18 Ill. 2d 518, 523, 165 N.E.2d 329, 332.) This deference to the Commission is particularly important in the rate-making function where the court may not substitute its judgment for the sound judgment of the Commission. (*Illinois Bell Telephone Co. v. Illinois Commerce Com.*, 55 Ill. 2d 461, 470, 303 N.E.2d 364, 369; *Iowa-Illinois Gas & Electric Co. v. Illinois Commerce Com.*, 19 Ill. 2d 436, 442, 167 N.E.2d 414, 417.) Nevertheless, the Commission may not ignore pertinent elements affecting the rate structure. (*Illinois Bell Telephone Co. v. Illinois Commerce Com.*, 414 Ill. 275, 286, 111 N.E.2d 329, 335; *Illinois Bell Telephone Co. v. Illinois Commerce Com.*, 55 Ill. 2d 461, 470, 303 N.E.2d 364, 369.) With these principles in mind, we turn to the consideration of the particular issues raised.

■■ A public utility is entitled to a fair return on the value of the property used in service to the public. In order to achieve the fair rate of return, the rates set by the Commission must be sufficient to cover operating expenses, depreciation, necessary reserves and provide for the Commission determined rate of return. (*Illinois Bell Telephone Co. v. Illinois Commerce Com.*, 414 Ill. 275, 286, 111 N.E.2d 329, 335; (*Illinois Bell Telephone Co. v. Illinois Commerce Com.*, 55 Ill. 2d 461, 470, 303 N.E.2d 364, 369.) While income taxes are normally included in operating expenses, the Commission here determined that no income taxes were actually paid by the corporation. Monarch does not challenge this finding, but contends as a matter of law it is entitled to compensation for the amount the corporation would have paid had it not elected under Subchapter S of the Internal Revenue Code (26 U.S.C. §1371 *et seq.*) to be taxed at the shareholder level.

■■ Monarch contends that the purpose of Subchapter S would be

frustrated if income taxes were not included in operating expenses. We do not agree. It is true, as Monarch contends, that the Subchapter S method of attributing income directly to stockholders does not convert the corporate entity into a partnership. (*United States v. Silverman*, 359 F. Supp. 1113 (N.D. Ill. 1973).) Thus an officer of the Subchapter S corporation may not invoke the fifth amendment privilege against self-incrimination in refusing to produce corporate records pursuant to an Internal Revenue Service subpoena. (*United States v. Richardson*, 469 F.2d 349 (10th Cir. 1972); *United States v. Silverman*, 359 F. Supp. 1113 (N.D. Ill. 1973).) Nor does the employment of shareholders by the Subchapter S corporation convert the shareholders from employees to partners. (*Wilhelm v. United States*, 257 F. Supp. 16 (Wyo. 1966).) But this is not dispositive of the issue here. Monarch fails to cite, and our research does not disclose, any intent on the part of the Congress to require the inclusion of income taxes that would have been paid in the operating cost of a public utility subject to state regulation.

Illinois courts have dealt with the relationship of the Internal Revenue Code and the rate regulation of public utilities only infrequently. In *City of Alton v. Commerce Com.*, 19 Ill. 2d 76, 165 N.E.2d 513, the public utility opted for the accelerated depreciation as provided for by section 167 of the Internal Revenue Code rather than straight line depreciation. The Commission allowed the utility to subtract from gross income the amount of taxes the utility actually paid plus the increment that would have been paid had the utility not elected to depreciate under the accelerated method. In rejecting the contention that the Internal Revenue Code required this result, the court noted:

> "We must remember, furthermore, that we are not here dealing with the tax treatment of utilities but with the pricing of their product, that is, with the rate charged for their services. Congress has provided that all corporations may reduce their taxes by accelerated depreciation. It has not required the money thus retained to be used for expansion." (*City of Alton v. Commerce Com.*, 19 Ill. 2d 76, 89, 165 N.E.2d 513.)

In reversing the Commission order, the court noted that while the continuous deferral of taxes due is within the discretion of the Commission, the benefit of the election of the accelerated depreciation must go to the ratepayers, and not to the utility shareholders.

In *Federal Power Com. v. United Gas Pipe Line Co.*, 386 U.S. 237, 18 L. Ed. 2d 18, 89 S. Ct. 1003, 1009 (1967), the utility claimed it was entitled to include the amount of income tax it would have paid had it not elected, under the Internal Revenue Code, to file a consolidated return as a member of an affiliated group. Because of the losses of some of the members, the utility paid taxes in an amount lower than it would have paid had it not opted to file the consolidated return. In dealing with the

contention that the Internal Revenue Code required the inclusion of the full tax bill as a part of the cost of service, the court stated:

> "There is no frustration of the tax laws inherent in the Commission's action. The affiliated group may continue to file consolidated returns and through this mechanism set off system losses against system income, including United's fair return income. The tax law permits this, but it does not seek to control the amount of income which any affiliate will have. Nor does it attempt to set United's rates. This is the function of the Commission, a function performed here by rejecting that part of the claimed tax expense which was no expense at all, by reducing the cost of service and therefore rates, and by allowing United only a fair return on its investment." *Federal Power Com. v. United Gas Pipe Line Co.*, 386 U.S. 237, 246-47, 18 L. Ed. 2d 18, 26, 89 S. Ct. 55.

■■ We find the rationale of these cases to be persuasive. Subchapter S permits a corporation to elect to "pass-through" its income and thereby avoid a double tax on the income. It does not purport to control the determination of the operating expenses and rates of public utilities. This function is properly vested in the Illinois Commerce Commission. The Commission exercised its discretion by rejecting a claimed expense that was not in fact paid by the company. Its findings were supported by substantial evidence in the record and were not against the manifest weight of the evidence. No error of law or abuse of discretion was committed.

As we find the Commission properly rejected the claimed expense, Monarch's second contention must also fail. The Commision granted an 8.75% rate of return. Monarch does not question the reasonableness of this rate, but instead alleges that its effective rate of return was only 6.19% due to the Commission's failure to include income tax expenses in the operating expenses. As the income tax expense was properly rejected, the contention is without merit.

Nor is Monarch's claim of estoppel meritorious. In 1970, Monarch elected to file as a Subchapter S corporation and has continued to do so. In its annual reports to the Commission, Monarch has included income taxes as an element of its expenses. No objection by the Commission was conveyed to Monarch. Monarch's tariff remained constant during the period as no increases were sought. Monarch relies on section 8 (providing for the general supervision of utilities by the Commission) and section 19 (providing for the correction of erroneous or defective reports) of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, pars. 8 and 19) for its claim of estoppel.

■■ The party claiming estoppel must prove the facts and circumstances entitling it to estoppel by clear and unequivocal evidence.

(*Spence v. Washington National Insurance Co.*, 320 Ill. App. 149, 50 N.E.2d 128.) The claiming party must show actual reliance on the representation of the other and an inability to determine the true facts. (*Levin v. Civil Service Com.*, 52 Ill. 2d 516, 288 N.E.2d 97.)

> "Estoppel is based on the principle that the party estopped has by word or conduct, affirmatively or negatively, intentionally or through culpable negligence, induced another to believe and act on such words and conduct, and as a consequence would suffer injury if contrary assertions or denials were allowed." *Jennings v. Bituminous Casualty Corp.*, 47 Ill. App. 2d 243, 249-50, 197 N.E.2d 513.

In this case, Monarch has received, and will continue to receive, the fair rate of return to which it is statutorily entitled. It has not shown the necessary injury or reliance required to invoke the doctrine of estoppel.

■■ In addition, another principle militates against Monarch's claim of estoppel. Estoppel against public bodies is not favored, and exceptional circumstances are required before the doctrine will be invoked. (*People ex rel. Brown v. Illinois State Troopers Lodge No. 41*, 7 Ill. App. 3d 98, 286 N.E.2d 524.) More than mere nonaction on the part of the public officials involved is required. (*People ex rel. Petty v. Thomas*, 361 Ill. 448, 198 N.E. 363.)

> "It is said that since the State cannot be sued without its consent, an inevitable consequence is that it cannot be bound by estoppel. More importantly, perhaps, is the possibility that application of *laches* or estoppel doctrines may impair the functioning of the State in the discharge of its government function, and that valuable public interests may be jeopardized or lost by the negligence, mistakes or inattention of public officials." *Hickey v. Illinois Central R.R. Co.*, 35 Ill. 2d 427, 447-48, 220 N.E.2d 415.

The Illinois Commerce Commission, in its rate-setting function, acts as a protector of the public interest in seeking to keep rates as low as possible while insuring the utility a fair and reasonable rate of return. (*Village of Apple River v. Illinois Commerce Com.*, 18 Ill. 2d 518, 523, 165 N.E.2d 329, 332.) Mere nonperformance of a discretionary duty of the Commission is clearly insufficient as a basis for estoppel, particularly where the utility has and will continue to receive a fair and reasonable rate of return.

For the foregoing reasons the order of the circuit court of Fayette County is reversed and the order of the Illinois Commerce Commission is affirmed.

Reversed.

CARTER, P. J., and JONES, J., concur.