THE CITY OF CHAMPAIGN *et al.*, Intervenors-Appellants, v. THE ILLINOIS COMMERCE COMMISSION, Appellee.

Fourth District No. 4—90—0392

Opinion filed February 28, 1991.

Frederick Stavins, City Attorney, and Kenneth N. Beth, of Evans & Froehlich, both of Champaign, for petitioners.

Neil F. Hartigan, Attorney General, of Springfield (David L. Nixon, Special Assistant Attorney General, of Chicago, of counsel), for Illinois Commerce Commission.

JUSTICE KNECHT delivered the opinion of the court:

The cities of Champaign and Urbana (cities), intervenors, appeal from the final order of the Illinois Commerce Commission (Commission) which altered portions of an agreement reached between the cities and Northern Illinois Water Corporation (NIWC). (*Northern Illinois Water Corp.*, No. 89—0176 (Illinois Commerce Comm'n, Mar. 21, 1990) (unpublished decision) (hereinafter Commission's decision).) The cities contend the Commission erred in finding fees negotiated between them and NIWC should be recaptured from municipal customers only and in ordering the fees be line itemized. We affirm.

In 1986, the cities began negotiations with NIWC, a public utility which serves the Champaign-Urbana area. Negotiations were completed in 1989, with separate agreements between the cities and NIWC. Entitled "An Agreement Concerning the Right of Northern Illinois Water Corporation to Use the Public Ways of the City, Fire Protection, and Other Related Matters," the agreements granted NIWC the nonexclusive right to install, operate, and maintain water facilities in, upon, along, across, and under the public ways of the cities for the purpose of providing and distributing water for public use. The agreements were for a term of 15 years.

Section 4.1 of the Champaign agreement provided for NIWC to pay the City of Champaign a one-time lump-sum payment of $112,764.36. The same provision in the City of Urbana agreement provided for a lump-sum payment of $53,308.70. The agreements stated the lump-sum payments were for the rights granted within the agreements, including the right of using the public ways. The payments were due and payable within 10 days from the date the Commission allowed amortization of the payments. Section 4.2 of the individual agreements provided so long as NIWC exercises and enjoys the rights granted to it under the agreements, NIWC is to pay the City of Champaign a minimum annual amount of $85,000 and to the City of Urbana a minimum annual amount of $42,500. Both agreements were contingent upon the authorization by the Commission of recovery in NIWC's rates of the lump-sum payments provided for in section 4.1 of each agreement and the minimum annual payments provided for in section 4.2 of each.

On April 27, 1989, NIWC filed with the Commission a proposed general increase in water rates for the Champaign-Urbana service territory. The Commission staff (staff) challenged various charges imposed by the agreements between NIWC and the cities. Hearings were held on June 15, 1989, July 26, 1989, October 18, 1989, and De-

cember 14, 1989. On January 19, 1990, the cities entered their individual appearances.

The hearing examiner issued a proposed order on February 8, 1990. Regarding the lump-sum payments set forth in section 4.1 of the agreements, the proposed order stated:

"No party has asserted that the Cities lack authority to assess franchise fees against Respondent for the use of the Cities' right-of-way or that such right-of-way is available from other sources. The Commission believes that Respondent has the responsibility to take all actions reasonably necessary to obtain right-of-way privileges at the lowest possible cost. In the instant case, the record indicates that Respondent has negotiated with the Cities over a prolonged period. There is no evidence in the record that Respondent could have [negotiated] more favorable agreements resulting in lower franchise fees or lower revenue requirements.

Staff has argued that there should be no recovery of the initial lump sum payments specified in the franchise agreements because the apparent bases of the amounts of such payments are the past due balances owed by the Cities to Respondent for fire protection during the period between December 1983 and July 1985. The Commission finds that the method utilized by the Cities to arrive at the amounts of the initial lump sum payment is not a sufficient basis to disallow such payments for rate-making purposes, where as explained above, there is no indication that a less costly alternative is available.

It is further Staff's position that the lump sum payments pertain to a period prior to the test year. The Commission, however, agrees with Respondent that the initial lump sum payments are part of the total consideration for the franchises, which are applicable to current and future periods, not prior periods. The agreements provide that the lump sum payments are due in 1990, which is the test year. The Commission therefore, rejects Staff's position that there should be no recovery of the lump sum payments.

Staff recommended the amortization of the lump sum payments over a 15 year period if the Commission determines that the payments are valid franchise fees. Respondent has proposed a three year amortization period. The only justification offered by Respondent for the three year amortization period is that the Agreements provide for such an amortization period. The Commission concludes that the lump sum payments should

be amortized over a 15 year period in view of the fact that Respondent will be receiving benefits under the agreements for 15 years.

The Commission also rejects Respondent's proposal to include the unamortized balance of the lump sum payments in rate base for the following two reasons. First, Respondent has presented no ratemaking theory as to why a return should be allowed on the amortized balance. Second, Staff witness Voss testified that Respondent expects that the Cities will pay the balances owed to Respondent for fire protection after they receive the lump sum payments. Respondent did not indicate that such testimony was untrue." (*Northern Illinois Water Corp.*, No. 89—0176 (Illinois Commerce Comm'n, Hearing Examiner's proposed order, Feb. 8, 1990) (unpublished decision) (slip op. at 11-12) (hereinafter Hearing Examiner's decision).)

In its final order of March 21, 1990, the Commission adopted this portion of the proposed order. Commission's decision, slip op. at 11-12.

Regarding the minimum annual payments set forth in section 4.2 of the agreements, the hearing examiner's proposed order, in part, stated:

"Staff witness Stack recommended that any amount included in the revenue requirement for franchise fees paid to the Cities of Champaign and Urbana be collected only from customers within the city limits of the respective Cities. He recommended that the charge for franchise fees be listed separately on the bills of those customers, and that the franchise fees be recovered through a flat charge that varies by meter size in the same manner that public fire protection charges are recovered.

Mr. Stack explained the bases of his recommendation concerning recovery of the franchise fees. He stated that franchise fees benefit the municipality imposing the fee. He indicated that it would be inequitable to force customers outside the municipal limits of Champaign and Urbana to pay for such fees through their water rates. He indicated that Union Electric Company has a tariff in effect pursuant to the Commission's order in consolidated Docket Nos. 80—0370 and 80—0368 which recovers franchise fees through a percentage added to the base bill of customers located within the municipalities imposing the franchise fees.

Respondent has not opposed Mr. Stack's recommendation concerning recovery of franchise fees.

In their brief, the Cities of Champaign and Urbana opposed Mr. Stack's recommendation. The Cities contended that the franchise fees should be recovered from all customers in Respondent's Champaign Division. They indicated that the existence of water pipes under their streets facilities [sic] the delivery of water to Respondent's customers that are located outside their corporate limits. They concluded that Mr. Stack's proposal unfairly forces their residents to subsidize ratepayers located outside their corporate limits.

The Cities also alleged that Mr. Stack has provided no rationale for his recommendation that the charge for franchise fees be shown as a separate line item on customer's bills. The Cities indicated that there are many expenses incurred by the Company that are much larger than the Cities['] charges for use of right-of-way. The Cities stated that Respondent has not been required to show the cost of the use of other right-of-way as a separate line item on its bills. The Cities also alleged that it has not been the practice of the Commission to list fees charged by municipalities as a separate line item on customers' bills.

In its reply brief, Staff indicated that there is nothing in the record to support the Cities' theory that franchise fees are entirely related to the use of their streets and damages caused to their streets. Staff asserted that the franchise fees are a hidden tax imposed by the Cities and as such, should be recovered from customers located in the area benefiting from the tax.

The Commission concludes that Mr. Stack's proposal is reasonable and should be approved. The Commission agrees with Staff that the franchise fees *are a hidden tax which* should properly be imposed only on Respondent's customers residing within the Cities and shown as a separate line item on their bills." (Emphasis added.) (Hearing Examiner's proposed order, slip op. at 31-32.)

In its final order, the Commission altered the proposed order by deleting the emphasized language above, "are a hidden tax which." (Commission's decision, slip op. at 32.) In all other respects, the Commission adopted this portion of the proposed order. Commission's decision, slip op. at 31-32.

■ The Commission is a legislative agency created for the purpose of applying the numerous details of regulatory police power over public utilities. The legislature has vested in the Commission the function of fixing rates of public utilities which will be just and reasonable

and produce a fair return upon the property used and employed in the public service. *City of Hurst v. Illinois Commerce Comm'n* (1983), 120 Ill. App. 3d 354, 458 N.E.2d 568.

■ The findings and conclusions of the Commission on questions of fact shall be held to be *prima facie* true; rules, regulations, orders, or decisions of the Commission shall be held to be *prima facie* reasonable; and the burden of proof upon all issues raised on appeal shall be upon the party appealing from such rules, regulations, orders, or decisions. (Ill. Rev. Stat. 1989, ch. 111⅔, par. 10—201(d).) When the sufficiency of the evidence to support an order of the Commission is questioned, the order will not be set aside unless it is clearly against the manifest weight of the evidence. (*City of Hurst*, 120 Ill. App. 3d at 360, 458 N.E.2d at 572.) In reviewing an administrative decision, the reviewing court is not authorized to reweigh the evidence or to substitute its judgment for that of the agency. *Okino v. Department of Corrections* (1980), 84 Ill. App. 3d 1084, 405 N.E.2d 1369.

■ The cities have failed to prove the Commission's decision finding the fees should be recaptured only from municipal customers is unreasonable, in clear violation of a rule of law, or against the manifest weight of the evidence. Though the testimony presented before the Commission was contradictory on this issue, the Commission's order reflected it considered both sides, and its finding of facts and resulting order are not unreasonable.

Staff witness Thomas Stack recommended the fees should be recovered from customers within the city because the fees benefited the municipality imposing the fees. Stack further stated it was neither fair nor equitable to customers located outside the municipality to be forced to pay such fees through their utility rates. Stack cited the current Union Electric Company rates approved by the Commission in "Dockets 80—0368 and 80—0370" in support of his contention. There, compensation owing from the company to the municipality for the right to use the streets for the transmission and distribution of electric energy was ordered to be recovered from the municipality customers only.

The cities contend customers outside the municipality are benefiting through the receipt of services and, accordingly, should share in the payment of the fees. Similar arguments were rejected in *City of Elmhurst v. Western United Gas & Electric Co.* (1936), 363 Ill. 144, 1 N.E.2d 489, and in *Village of Maywood v. Illinois Commerce Comm'n* (1961), 23 Ill. 2d 447, 178 N.E.2d 345. In *City of Elmhurst*, the City of Elmhurst filed a complaint with the ICC challenging a new rate schedule for gas service. The schedule authorized the gas company to

add to its uniform charges for gas service a percentage differential sufficient to meet the annual payment which the company was required to pay to the City of Elmhurst pursuant to its franchise ordinance. Nonmunicipal customers within the same service territory were not responsible for the additional percentage. In the *Village of Maywood,* the Village of Maywood challenged a proposed rate change Northern Illinois Gas Company had filed with the ICC. The proposed rate change granted a 3% increase in gas rates for consumers in the village. The increase was requested to reimburse the company for the expense of franchise payments required to be made to the village. In both cases, the Illinois Supreme Court held that as the cities were deriving the benefit of the payments, the recapture of the payments from the consumers in those communities was proper. *City of Elmhurst,* 363 Ill. at 147, 1 N.E.2d at 491; *Village of Maywood,* 23 Ill. 2d at 450-51, 178 N.E.2d at 347.

■ Similarly, we find the benefit to be focused on here is the benefit of compensation from NIWC to the cities and not the benefit of receiving this service. The Commission's decision finding the fees should be recaptured only from municipal customers is reasonable.

■ Furthermore, we are not persuaded the Commission erred in ordering the fees be line itemized. The cities contend the Commission is without authority to require line itemization as it is their contention line itemization can only be ordered when specifically authorized by the Public Utilities Act (Act) (Ill. Rev. Stat. 1989, ch. 111²/₃, par. 1—101 *et seq.*).

The provisions of the Act which specifically require line itemization of a utility's expenses are sections 9—221, 9—222, and 9—223. (Ill. Rev. Stat. 1989, ch. 111²/₃, pars. 9—221, 9—222, 9—223.) Sections 9—221 and 9—222 discuss the utility's ability to recover tax payments. The provisions mandate the rate component which recovers the taxes be provided on customers' bills as separate line items. Section 9—223 addresses the utility's cost incurred by providing services for fire protection. Charges which recover these costs are to be shown as separate items on the customers' bills. The cities contend that unless the fee in question was imposed as a tax, it does not fall under any of these provisions.

Initially, we note the final order appealed from made no conclusive finding the fees were a tax. No rationale was given for the Commission's deletion of the phrase "hidden tax" from the hearing examiner's proposed order. The deletion may have been simply stylistic choice, and we cannot attempt to determine the Commission's thoughts on this matter. Furthermore, the statutes cited by the cities

do not preclude the Commission from ordering line itemization in other circumstances. The cities' argument is based upon an unjustifiably narrow interpretation of the regulatory authority granted to the Commission in the Act. The legislature has granted broad discretionary powers to the Commission regarding regulation of public utilities. (*Alton Water Co. v. Illinois Commerce Comm'n* (1978), 60 Ill. App. 3d 553, 377 N.E.2d 385.) The Commission's actions here are not beyond these discretionary powers.

Affirmed.

SPITZ and McCULLOUGH, JJ., concur.