THE CITY OF CHICAGO, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents-Appellees.

First District (6th Division)   No. 1—92—1397

Opinion filed September 17, 1993.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Conrad Reddick, and Alan Neff, Assistant Corporation Counsel, of counsel), for petitioner.

Roland W. Burris, Attorney General, of Springfield (G. Darryl Reed, Special Assistant Attorney General, of Chicago, of counsel), for respondent Illinois Commerce Commission.

Hopkins & Sutter (Paul F. Hanzlik and Bryan S. Anderson, of counsel), and Kevin M. Forde, Ltd. (Kevin M. Forde, of counsel), both of Chicago, for respondent Commonwealth Edison Company.

JUSTICE GIANNIS delivered the opinion of the court:

The City of Chicago (City) appeals from an order of the Illinois Commerce Commission (Commission) approving with modification Commonwealth Edison Company's (Edison) proposed Rider 28—"Local Government Compliance Clause" (Rider 28). In general, Rider 28 directs Edison to recover the marginal costs of providing "nonstandard" service from customers within any governmental unit that mandates such service. Currently any additional costs associated with mandated nonstandard service are recovered from all Edison consumers as a component of Edison's base electricity rates. Rider 28 would, for example, add a line-item charge, based upon kilowatt-hours of electricity used, to the bill of any consumer who resides in a municipality that requires power lines to be buried, rather than suspended from poles.

The City raises two issues in this appeal: (1) whether the Commission's order approving Rider 28 contains findings or analyses sufficient to allow an informed judicial review; and (2) whether the findings of the Commission are supported by substantial evidence. The City also argues that the implementation of Rider 28 creates unlawful rate discrimination.

Illinois public utilities may charge their customers for public utility services only such amounts and under such terms and conditions as are expressly filed with and approved by the Commis-

sion. (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 9—240.) The Public Utilities Act (Act) outlines the procedures that utilities must follow to obtain Commission approval of rates and other charges. (See Ill. Rev. Stat. 1991, ch. 111²/₃, par. 1—101 *et seq.*) Pursuant to the Act, a utility must file with the Commission a schedule or supplement setting forth its proposed rates. Ill. Rev. Stat. 1991, ch. 111²/₃, par. 9—201(a).

Utility charges are stated in rates and riders which are approved by the Commission. A rider is used to modify a rate to provide for recovery of costs that are uncertain in duration, timing or amount.

Changes in rates and riders become effective 45 days after filing unless the Commission decides to investigate the new charges and hold hearings to determine whether the charges should be adopted. In such cases, the filing is "suspended" while the Commission conducts its investigation and hearing. (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 9—201(b).) If the Commission decides to investigate the propriety of the new charges, it may suspend the filing initially for up to 105 days in order to hold hearings to determine whether the new charges are just and reasonable. Ill. Rev. Stat. 1991, ch. 111²/₃, par. 9—201(c).

Proposed Rider 28 was filed with the Commission on May 13, 1991. It was designed to address a concern by Edison of how to handle mandates by local governments that services or facilities be provided that are beyond the standard services typically offered by Edison. For example, a village ordinance may require that all transmission lines be buried, that all utilities poles be painted, or that certain facilities be fenced with ornamental ironwork. When such a village requests this type of service, Edison is empowered to charge the village directly. Rider 28 is not designed, however, to deal with the situation that arises when such a village offers to purchase nonstandard services. Instead, Rider 28 deals with the situation when such a village demands through its statutory or constitutional powers extra services be provided without compensation. In such a case, Edison's only way of recouping its costs is to add the additional expense to its general costs which are ultimately paid by all Edison ratepayers.

On June 5, 1991, the Commission suspended Rider 28 to and including October 9, 1991. On October 2, 1991, the Commission resuspended Rider 28 to and including April 9, 1992, to allow time to complete its investigation of Rider 28. While Rider 28 was suspended, the Commission held hearings to analyze how and when it would be implemented, what impact its implementation would have on Edison and its customers, and whether it was just and reasonable.

The Commission held full evidentiary hearings on October 30, 1991, and November 1, 1991. Several parties appeared or intervened in the proceeding before the Commission, including: the staff of the

Commission (Staff); the Office of Public Counsel; the City; the Northwest Municipal Conference, the West Central Municipal Conference, and the South Suburban Mayors and Managers and Du Page County Mayors and Managers Conference; the People of Cook County State's Attorney; and Edison. All parties were given the opportunity to present witnesses. Edison presented the testimony of Ms. Arlene A. Juracek, its director of rates, and Mr. Loren D. Strohman, its transmission and distribution manager. The Staff presented the testimony of Mr. Thomas R. Stack, Director of the Water/Sewer Program of the Commission's Office of Policy and Planning, who testified about his analysis of the impacts and effects of Rider 28 from practical and policy perspectives. The City presented no witnesses.

In support of Rider 28, Edison presented evidence that some local governmental units had mandated more expensive nonstandard electric facilities and services without providing for any means of recovering payment to Edison for the extra costs involved. For example, the Village of Tinley Park enacted (but later rescinded) an ordinance mandating burial of certain electrical transmission and distribution lines, in spite of Edison's general practice of providing the lowest cost reliable electric service generally through an overhead transmission and distribution system. Ms. Juracek testified that the costs of such nonstandard facilities and services are not among the expenses that Edison recovers in its base rates or in any other way.

Mr. Strohman testified that costs under Rider 28 are computed by comparing the cost of the required nonstandard service or facility to the cost of Edison's standard services or facilities, using Edison's standard construction and design specifications, labor and material costs.

During the hearings, the Staff proposed one significant modification to Rider 28. Under its franchise agreements with certain municipalities, Edison has agreed to provide certain nonstandard facilities and services. For example, the City's ordinance containing its franchise agreement entitled the City to direct Edison to locate its facilities underground provided that the extra costs to Edison do not exceed $1 million annually. In its original form, Rider 28 did not cover these nonstandard services. The Staff, however, submitted evidence to show that costs imposed on Edison for above-standard facilities pursuant to a franchise agreement were no different from those costs imposed through a local ordinance and that rate discrimination would result unless both types of costs were recovered from customers residing in the local governmental unit imposing the costs. The Staff's proposal dealt only with above-standard facilities and services provided pursuant to a franchise agreement, but not fees paid pursuant to a franchise agreement.

The Commission ultimately approved Rider 28, but ordered that the rider be modified as the Staff recommended to include nonstandard service costs associated with franchise agreements. During the course of the proceedings Edison had opposed the change made by the Commission because it regarded costs associated with franchise agreements as consideration for valuable use rights. Edison argued that these costs were indistinguishable from other costs of doing business similar to the costs it incurred when it acquired similar rights from private parties. Edison has not, however, appealed the Commission's decision to modify Rider 28.

While not directly part of this appeal, an understanding of a second rider proposed by Edison is necessary. Rider 15—"Local Government Requirement Clause" (Rider 15)—was considered by the Commission simultaneously with Rider 28 and was rejected in the same order that approved modified Rider 28. These riders were identical in nature, except Rider 15 proposed that Edison localize monetary fees imposed by local governments. As with Rider 28 prior to its modification, Rider 15 excluded costs which Edison incurred pursuant to a franchise agreement. After hearing, the Commission canceled and annulled Rider 15, concluding that the exclusion of franchise fees from the rider presented too grave a potential for rate discrimination under Edison's current rate structure. Instead of modifying Rider 15 as the Commission had done with Rider 28, the Commission directed the Staff to "conduct an investigation into the restructuring of Edison's rates on a revenue neutral basis." The order also directed the Staff to center its investigation on "restructuring the rates so that any costs imposed upon [Edison] by a local governmental unit, including but not limited to, franchise fees and free and/or reduced rate service, will be recovered solely from those ratepayers within the boundaries of the particular local governmental unit imposing such costs."

The City argues that the Commission has failed to make adequate findings to support its decision approving modified Rider 28. In the alternative, the City claims that there is insufficient evidence in the record to support the Commission's order. Finally, the City argues that the approval of Rider 28 as modified by the Commission necessarily results in unlawful rate discrimination. In this last regard, the City raises three distinct claims. First, the City argues that rate discrimination results from the passage of Rider 28 because the rider unjustifiably distinguishes between franchise fees paid to Edison, which are not currently localized, and in-kind services provided as compensation pursuant to a franchise agreement. These costs are localized under Rider 28 as modified by the Commission. Second, the

City argues that nonstandard service that Edison is required to provide to local governments is indistinguishable from local property taxes. The City claims that it is patently unfair to require the localized recovery of some costs such as nonstandard service without also requiring the localized recovery of other similar costs. Third, the City argues that rate discrimination results when costs are localized that, in the long run, ultimately reduce Edison's operating costs. The City claims that such a result occurs when Edison is required by the City to provide nonstandard service which ultimately increases Edison's reliability, safety or efficiency.

■ Before addressing the City's claims, it is helpful to restate the standard of review. The powers of courts in reviewing orders issued by the Commission are limited. The purpose of judicial review is to keep the Commission within its jurisdiction so as not to violate any rights guaranteed by the constitution. (*Wabash R.R. Co. v. Order of Ry. Conductors of America* (1949), 402 Ill. 548.) Thus, it has long been recognized that upon appeal, the court exercises a statutory jurisdiction rather than a general, appellate jurisdiction. *Thompson v. Illinois Commerce Comm'n* (1953), 1 Ill. 2d 350, 358.

This special statutory jurisdiction is set forth in section 10—201 of the Act. (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—201.) This section states, in pertinent part, that a Commission order is to be considered *prima facie* reasonable and the party appealing the order shall have the burden of proof on all issues. (See Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—201(d).) An order of the Commerce Commission is presumed to be valid by the court in exercising an independent judgment in reviewing the order. *Peoples Gas Light & Coke Co. v. Slattery* (1940), 373 Ill. 31, 55.

■ Review of a Commission order is limited to the following questions: (i) whether the Commission acted within its authority; (ii) whether the Commission made adequate findings to support its decision; (iii) whether the Commission's decision is supported by substantial evidence; and (iv) whether constitutional rights have been violated. (*Illinois Bell Telephone Co. v. Illinois Commerce Comm'n* (1973), 55 Ill. 2d 461, 469; *Monarch Gas Co. v. Illinois Commerce Comm'n* (1977), 51 Ill. App. 3d 892, 894-95.) On review, the Commission's findings and conclusions on questions of fact are considered *prima facie* true, and its rules, regulations and orders are considered *prima facie* reasonable. (See Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—201(d).) Substantial evidence has been defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Metro Utility v. Illinois Commerce Comm'n* (1990), 193 Ill. App. 3d 178, 184.

In reviewing the Commission's order, the court must not put itself in the place of the Commission and conduct an independent investigation, nor should it substitute its judgment for that of the Commission. (*Produce Terminal Corp. v. Illinois Commerce Comm'n* (1953), 414 Ill. 582, 589.) On appeal, the court has neither the power nor the duty to conduct a *de novo* hearing, nor is the wisdom of decisions properly accorded to the Commission open to inquiry. (*Village of Apple River v. Illinois Commerce Comm'n* (1960), 18 Ill. 2d 518, 523. Accord *Cerro Copper Products v. Illinois Commerce Comm'n* (1980), 83 Ill. 2d 364, 370.) Matters of rate regulation are of legislative character, and it was never intended that courts should interfere with the functions and authority of the Commission so long as the order demonstrates sound and lawful analysis of the problems encountered. *Camelot Utilities, Inc. v. Illinois Commerce Comm'n* (1977), 51 Ill. App. 3d 5.

For support the City notes that section 9—241 of the Act states in pertinent part that "[n]o public utility shall establish or maintain any unreasonable difference as to rates or other charges, services, facilities, or in any other respect, either between localities or as between classes of service." (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 9—241.) While the City concedes that the Commission has the power to approve the localized recovery of costs in appropriate circumstances (see, *e.g., Village of Maywood v. Illinois Commerce Comm'n* (1961), 23 Ill. 2d 447; *City of Elmhurst v. Western United Gas & Electric Co.* (1936), 363 Ill. 144; *City of Champaign v. Illinois Commerce Comm'n* (1991), 209 Ill. App. 3d 1070), it argues that such recovery amounts to unreasonable rate discrimination unless all similar costs imposed by local governments are recovered in a similar manner. At the very least, the City argues, the Commission has failed in its order to articulate a principled basis which explains why nonstandard services may be treated differently from other similar, locally imposed costs. *Cf. City of St. Charles v. Illinois Commerce Comm'n* (1961), 21 Ill. 2d 259.

In arguing that the Commission's order must be remanded, the City argues that the issues it now raises were raised in the proceedings before the Commission, but are not addressed by the Commission's order. The Commission responds that, in considering the record, it is not required to make a finding on each evidentiary fact or claim. (*United Cities Gas Co. v. Illinois Commerce Comm'n* (1971), 48 Ill. 2d 36, 40.) It is sufficient that its findings are specific enough to permit an intelligent review of its decision. (*Illinois Central R.R. Co. v. Illinois Commerce Comm'n* (1952), 411 Ill. 526, 528.) The Commission states that any omission of the City's arguments from its

order is the result of the fact that the City offered none of its own evidence to the Commission but, instead, chose to "lay in the weeds until the briefing stage" before raising its objections.

■ After reviewing both the record before us and the Commission's order, we conclude that the Commission has made sufficient findings and analysis for us to conduct an informed judicial review. In order for the Commission to have implemented Rider 28, Edison was required to demonstrate that its implementation was just and reasonable. In its order, the Commission stated:

"With respect to proposed Rider 28 we find that with Staff's proposed modification, the Rider is just and reasonable. The potential for having certain ratepayers paying for specific nonstandard service, while other ratepayers receive the same nonstandard service at no cost, is unacceptable. All ratepayers within Edison's service territory should be responsible to bear the burden of the incremental difference between standard and non-standard service when such service is requested. We concur with Staff's concern over the potential inequity in standards of service between ratepayers in different governmental units as well as unincorporated areas. Staff's recommendation, therefore, assures that all ratepayers will be treated equally."

While the City may not agree with the conclusion reached by the Commission, this statement clearly articulates the basis for the Commission's approval of the rider and provides a basis for us to review its decision. In simplest terms, the Commission has decided that Rider 28 should be implemented because it is fairer to pass through charges to those who benefit from extra service rather than to require Edison itself or all Edison consumers to bear the costs associated with the additional service. As reiterated in *Governor's Office of Consumer Services v. Illinois Commerce Comm'n* (1991), 220 Ill. App. 3d 68, 76, a just and reasonable rate is a question of sound business judgment and is not the product of a legal formula. We turn our attention, therefore, to the question of whether the finding of the Commission that Rider 28 is just and reasonable is supported by substantial evidence.

■ Ms. Juracek testified that several municipalities have begun to look to Edison as a potential source of revenue or as a means of securing special local services. She testified that Rider 28 was necessary in order to allow Edison to "respond favorably" to local governmental units that impose special service requirements on Edison. She testified that Rider 28 allows Edison to look to those who cause costs to pay for them. Mr. Stack testified that customers living within local governmental units that impose additional costs upon

Edison would be the only consumers charged for these services under Rider 28 and that those who live within governmental units that do not impose costs on Edison would receive the benefit of lower base rates. He further testified that Rider 28 as modified by the Commission "follows the concept of the cost causer being the cost payer." Mr. Strohman testified that Rider 28 does not provide for any rate of return to Edison on amounts collected or for any recovery of carrying charges. The City offered no evidence of its own to refute the testimony of these witnesses and cross-examination by the City failed to undermine the basis of their testimony. We conclude, therefore, that the Commission's order is supported by substantial evidence.

Finally, because we believe that the City has failed to carry its burden on appeal, we reject the City's claim that the Commission's order necessarily results in unlawful rate discrimination. During the course of the proceedings the City failed to submit evidence showing that property taxes significantly varied between areas served by Edison; failed to put on evidence showing that property taxes are sufficiently similar to mandated nonstandard service costs to require that they be treated identically; and failed to put on evidence to indicate that mandated nonstandard services have the result of lowering Edison's long-term costs. Each of these propositions is necessary for the City's claims to prevail.

While the City has demonstrated that the approval of modified Rider 28, prior to the implementation of Rider 15, creates a situation in which in-kind services under a franchise agreement are localized while franchise fees or the provision by Edison of reduced-rate services to a governmental unit are not localized, we believe this fact does not in itself establish rate discrimination or require reversal of the Commission's order. We note that only *unreasonable* differences in rates between customers or classes of customers violate the Act. (*City of St. Charles*, 21 Ill. 2d at 264.) The Commission has indicated that discrepancies between the recovery of in-kind services and franchise fees are due to limitations of Edison's current rate structure. We also note that the Commission has directed the Staff to conduct an investigation into how Edison's rates might be restructured so as to allow all franchise fees and costs associated with free and/or reduced-rate services to be recovered from within the municipalities that benefit thereby. Clearly, the Commission has concluded that the implementation of Rider 28 creates a more equitable system than the one that currently exists. We believe that substantial evidence in the record supports this conclusion. Simply because Rider 28 fails to simultaneously address every cost-recovery inequality present in Edison's rate structure should not be used as a

basis for derailing modifications believed by the Commission to result in improvement.

We emphasize that the Commission's order is presumed reasonable and it is the City that must demonstrate the impropriety of the Commission's order based upon evidence in the record. (Ill. Rev. Stat. 1991, ch. 111²/₃, par. 10—201(d).) Because we conclude that the City has failed to meet its burden, the order of the Commission is affirmed.

Affirmed.

McNAMARA, P.J., and RAKOWSKI, J., concur.