# Illinois Official Reports

## Appellate Court

*Hawkins v. Commonwealth Edison Co.*, 2015 IL App (1st) 133678

| | |
|---|---|
| Appellate Court Caption | ROBIN HAWKINS, Both Individually and d/b/a Robin's Nest, a sole proprietorship, ROBERT DILLON, an individual, and GOT IT MAID, INC., an Illinois Business Corporation, on Behalf of Themselves, and All Others Similarly Situated, Plaintiffs-Appellants, v. COMMONWEALTH EDISON COMPANY, an Illinois Corporation, Defendant-Appellee. |
| District & No. | First District, First Division <br> Docket No. 1-13-3678 |
| Filed | February 17, 2015 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiffs' class action alleging that defendant electric utility failed to comply with an order of the Illinois Commerce Commission based on a revised timeline for the deployment of smart meters in the utility's transmission system pursuant to the act commonly known as the Illinois Energy Infrastructure Modernization Act was properly dismissed by the trial court on the ground that the complaint concerned the utility's rates and infrastructure, which fell exclusively within the jurisdiction of the Commission pursuant to *Sheffler*. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2013-CH-9126; the Hon. Mary L. Mikva, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Law Offices of Paul G. Neilan, P.C. (Paul G. Neilan, of counsel), and Valorem Law Group (Stuart J. Chanen, of counsel), both of Chicago, for appellants. |
| | |
| | Commonwealth Edison Company (Thomas S. O'Neill, of counsel), and Eimer Stahl LLP (David M. Stahl and David M. Simon, of counsel), both of Chicago, for appellee. |
| | |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1 Plaintiffs, Robin Hawkins, Robert Dillon, and Got It Maid, Inc., on behalf of themselves and all others similarly situated, appeal the order of the circuit court dismissing their complaint against defendant, Commonwealth Edison Company (ComEd), for lack of subject matter jurisdiction. The trial court relied on the supreme court's holding in *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, and found that since plaintiffs' complaint concerned the utility's rates and infrastructure, the Illinois Commerce Commission (Commission) has exclusive jurisdiction over the action. On appeal, plaintiffs contend that the trial court erred in interpreting the holding of *Sheffler* and applying it to the case at bar. For the following reasons, we affirm.

¶ 2                                 JURISDICTION

¶ 3 The trial court granted ComEd's motion to dismiss on November 1, 2013. Plaintiffs filed their notice of appeal on November 20, 2013. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                 BACKGROUND

¶ 5 In 2011 the General Assembly enacted what is commonly known as the Illinois Energy Infrastructure Modernization Act (EIMA) in order to revitalize and improve the state's energy infrastructure, create jobs, and promote economic growth. 220 ILCS 5/16-108.5 (West 2012). The EIMA sets forth investment plans for participating utilities that require them to invest in "electric system upgrades, modernization projects, and training facilities," as well as the modernization of their transmission and distribution infrastructures. 220 ILCS 5/16-108.5(b)(1), (2) (West 2012). Participation in the investment plans is voluntary; however, the statute provides an incentive by allowing participating utilities to recover their "expenditures made under the infrastructure investment program through the ratemaking process." 220 ILCS 5/16-108.5(b) (West 2012). ComEd elected to participate and agreed to

invest approximately $1.3 billion to modernize its transmission and distribution infrastructure, including the installation of smart meter technology.

¶ 6    Pursuant to the statute, ComEd filed its smart meter deployment plan with the Commission. The Commission approved the plan with modifications on June 22, 2012, and ordered that ComEd's smart meter deployment begin in September 2012. On July 6, 2012, ComEd petitioned for a rehearing, and to stay the Commission's June 2012 order, arguing that ComEd would experience a $100 million annual revenue shortfall under the deployment schedule. The Commission granted the rehearing but did not issue a stay of the June 2012 order, which remained enforceable. It did, however, adopt a revised timeline for the deployment of smart meters in recognition of the fact that ComEd's noncompliance with the June 2012 order made deployment under the initial timeline infeasible.

¶ 7    On April 4, 2013, plaintiffs filed their class action complaint alleging that ComEd's noncompliance with the Commission's June 2012 order was a violation of the Illinois Public Utilities Act (Act) (220 ILCS 5/1-101 *et seq.* (West 2012)). They further alleged that as a result, ComEd's smart meter deployment will be delayed more than two years. According to ComEd's expert witness, the delay will reduce the net present value to customers of the benefits from using smart meter technology by $182 million. Plaintiffs also contended that ComEd's violation of the June 2012 order was willful and sought punitive damages.

¶ 8    ComEd filed a motion to dismiss plaintiffs' complaint pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)). In its motion, ComEd argued four grounds for dismissal: (1) the trial court lacks subject matter jurisdiction because the Commission has exclusive jurisdiction over matters involving rates and infrastructure; (2) recently passed legislation eliminates any basis for the complaint; (3) plaintiffs lack standing because they failed to allege a direct personal interest in the matter; and (4) the damages sought by plaintiffs are too speculative. The trial court granted dismissal, finding that the Commission has exclusive jurisdiction over the action. It reasoned that plaintiffs' complaint "concerns a delay in infrastructure that clearly impacts rates" and therefore it "must defer to the [Commission's] expertise to determine the extent to which the delay in smart grid infrastructure will adversely impact ComEd's customers' rates and future service, and what remedy, if any, should be employed." Plaintiffs filed this timely appeal.

¶ 9                                                      ANALYSIS
¶ 10    On appeal, plaintiffs challenge the trial court's section 2-619 dismissal of their claim for lack of subject matter jurisdiction. Section 2-619 provides for involuntary dismissal of a claim based on certain defects and defenses, including lack of subject matter jurisdiction. 735 ILCS 5/2-619(a) (West 2012). Whether the trial court has subject matter jurisdiction over a claim is a question of law we review *de novo*. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 294 (2010).

¶ 11    Our courts have long recognized that the Commission is the body most capable of determining whether a utility's rates are reasonable and its services adequate, given its expertise in the complex data inherent in rate and service issues. *Sheffler*, 2011 IL 110166, ¶ 40. Accordingly, the legislature has granted the Commission broad powers to "promulgate orders, rules or regulations fixing adequate service standards." *Id.* (citing *Village of Apple River v. Illinois Commerce Comm'n*, 18 Ill. 2d 518, 523 (1960)). Section 9-252 of the Act provides that the Commission may order a utility to "make due reparation to the

- 3 -

complainant" if it finds that the utility "has charged an excessive or unjustly discriminatory amount for its product, commodity or service." 220 ILCS 5/9-252 (West 2012). The statute also requires that all claims for such damages "shall be filed with the Commission within 2 years from the time the produce, commodity or service as to which complaint is made was furnished or performed." *Id*. Courts have found that in enacting these provisions, the legislature intended to "preclude[ ] an action at law for such reparation until the commission has heard a claim therefor.' " *Sheffler*, 2011 IL 110166, ¶ 41 (quoting *Terminal R.R. Ass'n of St. Louis v. Public Utilities Comm'n*, 304 Ill. 312, 317 (1922)).

¶ 12 In contrast, section 5-201 sets forth circuit court jurisdiction for violations of the Act. This section provides:

> "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom ***. An action to recover for such loss, damage or injury may be brought in the circuit court by any person or corporation." 220 ILCS 5/5-201 (West 2012).

¶ 13 Taken together, the Act provides that a claim for reparations is within the jurisdiction of the Commission, while a claim for civil damages lies within the circuit court's jurisdiction. *Sheffler*, 2011 IL 110166, ¶ 42. Generally, "a claim is for reparations when the essence of the claim is that a utility has charged too much for a service, while a claim is for civil damages when the essence of the complaint is that the utility has done something else to wrong the plaintiff." *Id*. (citing *Flournoy v. Ameritech*, 351 Ill. App. 3d 583, 585 (2004)).

¶ 14 In *Sheffler*, our supreme court provided guidance to courts in determining whether a claim is for reparations or for civil damages. The plaintiffs in *Sheffler* filed a class action complaint against ComEd seeking compensatory damages from power outages that occurred following severe storms on August 23, 2007. *Sheffler*, 2011 IL 110166, ¶ 4. Their third amended complaint contained five counts, including allegations of negligence, breach of contract, and a violation of the Act. *Id*. ¶ 15. Count I alleged that ComEd had a duty to provide adequate service and breached its duty during the August 2007 storms, causing plaintiffs to sustain "damages in the form of spoiled food, water damage to walls, furniture, fixtures, appliances, furnace and water heaters, medical and electrical equipment, and repair costs." *Id*. ¶ 11. ComEd filed a motion to dismiss pursuant to sections 2-619 and 2-615 of the Code. The trial court dismissed the complaint with prejudice and the appellate court affirmed the dismissal. *Id*. ¶¶ 16-17. The appellate court reasoned that the relief sought by plaintiffs implicated rates and was based on allegations that ComEd provided inadequate service, issues within the exclusive jurisdiction of the Commission. *Id*. ¶ 18. Therefore, the trial court did not have jurisdiction of the complaint, and dismissal was proper pursuant to section 2-619(a)(1) of the Code. *Id*.

¶ 15 The supreme court in *Sheffler* agreed with the appellate court. It noted that the plaintiffs characterized their complaint as a claim for negligence and compensatory damages, which, plaintiffs argued, should put the complaint within the trial court's jurisdiction. *Id*. ¶ 50. However, the supreme court reasoned that in determining whether the Commission has jurisdiction, the proper focus should be "on the nature of the relief sought rather than the

basis for seeking relief." *Id*. The plaintiffs sought relief based on ComEd's provision of inadequate service. *Id*. Therefore, since "the relief sought by plaintiffs goes directly to ComEd's service and infrastructure," the court determined that their complaint falls within the Commission's original jurisdiction. *Id*.

¶ 16 In so holding, the supreme court noted the decision in *Village of Deerfield v. Commonwealth Edison Co.*, 399 Ill. App. 3d 84, 89 (2009), which interpreted reparations narrowly as claims involving only excessive or discriminatory rates. *Sheffler*, 2011 IL 110166, ¶¶ 54-56. It found that the *Village of Deerfield* court erred in "narrowly interpreting reparations as excluding any claims concerning service." *Id*. ¶ 55. It reasoned that "rates and service are inextricably tied together" and therefore, "complaints concerning the adequacy of ComEd's services" are reparations "fall[ing] within the jurisdiction of the Commission." *Id*. ¶¶ 53, 55.

¶ 17 Here, plaintiffs filed a breach of contract complaint seeking damages for ComEd's violation of the Commission's June 2012 order requiring it to deploy smart meters by September 2012. Plaintiffs alleged that as a result of the violation, ComEd's smart meter deployment will be delayed more than two years. They sought damages of at least $182 million, which represented the reduced amount of net present benefit to customers caused by the delay.

¶ 18 ComEd entered the agreement to deploy smart meter technology pursuant to the EIMA, which the legislature enacted in part to revitalize and improve the state's energy infrastructure. Participating utilities must invest in "electric system upgrades, modernization projects, and training facilities," as well as the modernization of their transmission and distribution infrastructures. 220 ILCS 5/16-108.5(b)(1), (2) (West 2012). Although participation in the investment plans is voluntary, the statute provides an incentive by allowing participating utilities to recover their "expenditures made under the infrastructure investment program through the ratemaking process." 220 ILCS 5/16-108.5(b) (West 2012). Although the complaint seeks compensatory damages for ComEd's violation of the June 2012 order, the focus of our analysis must be "on the nature of the relief sought rather than the basis for seeking relief." *Sheffler*, 2011 IL 110166, ¶ 50. Here, plaintiffs seek relief for damages they suffered when ComEd failed to deploy its smart meters by September 2012. According to the EIMA, the deployment of smart meters is an improvement of infrastructure, and utilities making such improvements may recover expenditures "through the ratemaking process." 220 ILCS 5/16-108.5(b) (West 2012). Since the nature of relief sought by plaintiffs goes directly to ComEd's infrastructure and service, their complaint is within the exclusive jurisdiction of the Commission. See *Sheffler*, 2011 IL 110166, ¶ 50.

¶ 19 Plaintiffs disagree, arguing that the holding in *Sheffler* does not apply here. They contend that their complaint does not allege inadequate service, as in *Sheffler*, but rather alleges that ComEd has "done something else to wrong" them when it violated the June 2012 order. As support, plaintiffs cite *Thomas v. Peoples Gas Light & Coke Co.*, 2011 IL App (1st) 102868, *Flournoy v. Ameritech*, 351 Ill. App. 3d 583 (2004), *Sutherland v. Illinois Bell*, 254 Ill. App. 3d 983 (1993), and *Gowdey v. Commonwealth Edison Co.*, 37 Ill. App. 3d 140 (1976).

¶ 20 In these cases, however, the wrong alleged to have harmed the plaintiffs involved fraudulent conduct by the utility. In *Thomas*, the plaintiff claimed that the utility attempted to collect a debt that had already been discharged in federal bankruptcy proceedings. *Thomas*, 2011 IL App (1st) 102868, ¶ 22. As the court in *Thomas* reasoned, the plaintiff did not

"allege an overcharge; she alleges an unlawful charge." *Id*. This "unlawful attempt to collect a debt *** has nothing to do with the utility's infrastructure, adequacy of service, or rate structure." *Id*. *Flournoy* concerned a claim that the utility fraudulently charged for multiple initial calling fees when it repeatedly cut off the plaintiff's collect calls. *Flournoy*, 351 Ill. App. 3d at 585. In *Sutherland*, the plaintiff claimed that she was charged for services that were either " 'unordered, inadequate or ambiguously billed.' " *Sutherland*, 254 Ill. App. 3d at 993. *Gowdey* involved ComEd's administration of a light bulb service for customers. The complaint alleged that ComEd assumed its customers opted to purchase the light bulb service without any affirmative indication that they had actually done so and charged their customers accordingly. *Gowdey*, 37 Ill. App. 3d at 148-49. The complaint simply alleged "that plaintiffs were charged for a service which they did not contract to purchase." *Id*. at 149.

¶ 21 None of these cases involved claims disputing the rates charged by the utilities or their infrastructure. Unlike *Thomas*, *Flournoy*, *Sutherland*, and *Gowdey*, the plaintiffs here alleged damages based on ComEd's failure to deploy smart meters by September 2012, conduct that involves issues of ComEd's infrastructure and rates. We are not persuaded by plaintiffs' argument.

¶ 22 Plaintiffs also contend that it is error to apply *Sheffler* here because the supreme court's discussion on the Commission's exclusive jurisdiction over rate and service issues was *dicta*. They argue that the court's holding focused primarily on the fact that a tariff applied barring all of the plaintiffs' claims, and therefore the jurisdiction analysis was unnecessary to the disposition of the case. See *Sheffler*, 2011 IL 110166, ¶ 38. Although *Sheffler*'s jurisdiction analysis was not necessary to its decision, it does not follow that the supreme court's opinion on the jurisdiction issue was mere *dictum*. There are two types of *dictum*: *obiter dictum* and judicial *dictum*. *People v. Williams*, 204 Ill. 2d 191, 206 (2003). *Obiter dictum*, which refers to a court's remark or opinion uttered as an aside, is neither integral to the opinion nor considered binding authority or precedent. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 277 (2009). However, the court's "expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause, if *dictum*, is a judicial *dictum*. [Citations.] *** [A] judicial *dictum* is entitled to much weight, and should be followed unless found to be erroneous." (Emphasis and internal quotation marks omitted.) *Id*. at 277-78. In *Sheffler*, the jurisdiction issue was clearly argued by counsel and the supreme court's analysis was detailed and thorough. If it is *dictum*, it is a judicial *dictum* that should be followed by courts as they would follow the primary holding of the case. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 236-37 (2010).

¶ 23 This determination is further supported by the recent case of *State of Illinois ex rel. Pusateri v. Peoples Gas Light & Coke Co.*, 2014 IL 116844, in which our supreme court cited *Sheffler* for the proposition that the Commission has exclusive jurisdiction over rate and service issues. In *Pusateri*, our supreme court noted that in the *Sheffler* case, it had "recently examined which causes of action against a regulated utility are subject to the exclusive jurisdiction of the Commission" and found that "[c]laims for reparations are subject to the exclusive jurisdiction of the Commission." *Id*. ¶ 18. The court quoted its finding in *Sheffler* that " 'a claim is for reparations when the essence of the claim is that a utility has charged too much for a service.' " *Id*. (quoting *Sheffler*, 2011 IL 110166, ¶ 42). Returning to the case before it, our supreme court found that "[a]t its heart, Pusateri's complaint alleges PG used

fraudulent means to get the State (and others) to pay too much for natural gas." The court reasoned that "[t]hough the remedy Pusateri seeks is a mix of penalty and damages, the sole reason the alleged falsehoods might be actionable under the False Claims Act is that they would have induced the State to pay too much for PG's natural gas." *Id*. ¶ 19. Our supreme court held that since "Pusateri's complaint is one for reparations," it is subject to the exclusive jurisdiction of the Commission. *Id*.

¶ 24 Plaintiffs' final argument is that the trial court erred in failing to address the constitutionality of the amendment to the EIMA, which states that a participating utility "shall be deemed to have been in full compliance with *** all Commission orders entered pursuant to [the EIMA], up to and including the effective date" of the amendment. Pub. Act 98-15, § 5 (eff. May 22, 2013) (amending 220 ILCS 5/16-108.5). Plaintiffs contend that "the legislative language declaring that ComEd is in compliance with prior orders is an unconstitutional, retroactive statute that violates constitutional principles of due process and separation of powers." However, since we have determined that the trial court lacks subject matter jurisdiction to hear plaintiffs' claim, and plaintiffs presented no independent count in their complaint raising constitutionality, we need not consider the merits of plaintiffs' other arguments on appeal. *People v. Flowers*, 208 Ill. 2d 291, 307 (2003) (where the trial court lacks jurisdiction to consider the claim, the appellate court has no authority to consider the merits of the appeal).

¶ 25 Plaintiffs contend that the challenged amendment strips the Commission "of all authority to undertake any investigation or take any adverse action regarding ComEd's noncompliance with" the Commission's orders. They argue that the amendment, combined with the cases of *Sheffler* and *Pusateri*, leaves them without a forum in which to address their claims and seek damages. We acknowledge and share plaintiffs' concerns. It is repugnant to our understanding of due process of law and justice that a wronged party be required to proceed exclusively in a forum that lacks the authority to investigate and take action against the wrong-doing entity. This clearly allows the wrongdoer to act with impunity and makes a mockery of the established principle that there should be a remedy for every wrong. However, we are bound to follow *Sheffler* and *Pusateri*, in which our supreme court determined that if the nature of relief sought by plaintiffs goes directly to ComEd's infrastructure and service, their complaint is within the exclusive jurisdiction of the Commission. Any changes to address plaintiffs' concerns must be made by the legislature or by our supreme court.

¶ 26 In its brief, ComEd argues that the trial court's dismissal of plaintiffs' complaint may be affirmed on the grounds that plaintiffs lacked standing to bring their claim and that a subsequent amendment to the Act effectively eliminates the basis for plaintiffs' claims. Due to our disposition of the matter, we need not consider these issues here.

¶ 27 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 28 Affirmed.