2016 IL App (1st) 150425

FOURTH DIVISION
August 11, 2016

No. 1-15-0425

COMMONWEALTH EDISON COMPANY,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Petitioner-Appellant,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀On Petition for
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀Administrative Review
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀from the Illinois Commerce
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀Commission
THE ILLINOIS COMMERCE COMMISSION, THE⠀)
PEOPLE OF THE STATE OF ILLINOIS ex rel. THE⠀)
ATTORNEY GENERAL OF THE STATE OF ILLINOIS,⠀)⠀⠀ICC Docket No. 14-0316
and THE CITIZENS UTILITY BOARD,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Respondents,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
(The Illinois Commerce Commission,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Respondent-Appellee).⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

⠀⠀⠀⠀⠀PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Howse and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1⠀⠀⠀Commonwealth Edison Company (ComEd) seeks direct appellate review of the final

order of the Illinois Commerce Commission (Commission) which defined the term "formula rate

structure" for purposes of sections 16-108.5(c) and (d) of the Public Utilities Act (Act) (220

ILCS 5/16-108.5(c), (d) (West 2012)). This definition essentially determines which changes to

the formula rate may be made in annual formula rate update (FRU) proceedings and which

changes must be made in separate proceedings under section 9-201 of the Act (220 ILCS 5/9-201

(West 2012)). In the proceedings below, ComEd and the Commission staff posed competing

definitions of the term "formula rate structure." Specifically, ComEd argued that the term should be defined to mean all of the schedules and appendices that it uses to calculate its revenue requirement, whereas the Commission staff argued that it should include only two specific schedules—Schedules FR A-1 and FR A-1 REC—which reflect the format and organization of major elements of ComEd's revenue requirement. The Commission agreed with its staff, and ComEd appeals that decision, claiming that it is contrary to law, not supported by substantial evidence, contrary to the manifest weight of the evidence, and arbitrary, capricious, and unreasonable.

¶ 2     This action began on April 16, 2014, when ComEd, a "participating utility" under section 16-108.5 of the Act, filed a petition pursuant to sections 16-108.5(c) and 9-201 of the Act requesting that the Commission "approve a housekeeping revision and a compliance change to its delivery service rate formula." ComEd alleged that the housekeeping change would "make the formula more readily understood" and the compliance change was necessary to "effectuate a rate formula ruling in the Commission's *** 13-0318 [order]." On August 19, 2014, the Commission entered an interim order approving the housekeeping change, but denying the compliance change as unnecessary. The interim order also initiated a "Phase 2" to the proceedings, during which the Commission was to determine, among other things that are not the subject of this appeal, what constitutes the formula rate's structure and protocols, and whether changes to the schedules, appendices, and work papers that support Schedules FR A-1 and FR A-1 REC could be changed only in section 9-201 proceedings.

¶ 3     An evidentiary hearing was conducted on September 29, 2014, during which the parties presented competing written testimony. Theresa Ebrey testified that she is a certified public accountant (CPA) in the accounting department of the financial analysis division of the Illinois

Commerce Commission. Ms. Ebrey recommended that the Commission define "formula rate structure" to mean "the Commission approved tariff set forth in [ComEd] tariffs as Rate DSPP, Tariff Sheet Nos. 417-437 which contain Schedules FR A-1 and FR A-1 REC." She further recommended that the Commission find that "only changes to Schedules FR A-1 and FR A-1 REC require Commission approval through a Section 9-201 filing."

¶ 4 Ms. Ebrey testified that it was her "opinion that by approving only Schedules FR A-1 and FR A-1 REC for Rate [Delivery Service Pricing and Performance (DSPP)] as the formula rate tariff in its Order in Docket No. 11-0721, the Commission effectively defined the 'formula rate structure' to be limited to those two formula rate schedules." She understood that:

> "ComEd's formula rate structure approved by the Commission to be set forth in the Rate DSPP tariff as Tariff Sheet Nos. 417–437 that were approved by the Commission in Docket No. 1100721 and later revised in Docket No. 13-0386, the filing implementing the requirements of SB-9 (P.A. 98-0015). The formats for only two schedules are included within those tariff sheets, Schedules FR A-1 (Net Revenue Requirement Computation on Sheet Nos. 423–424) and FR A-1 REC (Revenue Requirement Reconciliation Computation on Sheet No. 425). Additional schedules, appendices and workpapers are listed by number and name on Sheet Nos. 426 and 427, but no specific information regarding what is to be included on those ancillary documents is presented in the Rate DSPP tariff, outside of titles for those documents."

Ms. Ebrey further stated that it was her understanding "that the Commission does not consider the other supporting schedules not specifically set forth in the approved formula rate tariffs" to be "an 'approved' document for purposes of the formula rate update cases."

¶ 5 Ms. Ebrey also testified that "ComEd's position that any change to any spreadsheet included in 'the full set of Schedules and Appendices set forth and listed in Rate DSPP' must be approved in a separate Section 9-201 proceeding substantially impairs the Commission's '*ability to approve*' just and reasonable rates in every formula rate proceeding." (Emphasis in original.) She further testified that

> "[i]f [ComEd's] definition of formula rate structure is adopted, *** the Commission would need to annually initiate Section 9-201 proceedings to approve every minor formatting change to a supporting formula rate schedule or appendix in order to effectuate adjustments the Commission found to be just and reasonable in every annual update proceeding prior to issuing a final order in the annual formula rate proceeding. In other words, in addition to limiting the Commission's authority, [ComEd's] recommendation would also result in unnecessarily burdening the Commission with numerous additional Section 9-201 proceedings."

¶ 6 Christine Brinkman testified that she is a CPA employed by ComEd in the position of director, rates and revenue policy. Ms. Brinkman explained that as a participating utility under what is commonly known as the energy infrastructure and modernization act (modernization act), "ComEd's delivery services charges are updated each year using a formula established under [modernization act] and referenced in ComEd's formula rate tariff, which incorporates

specifically defined inputs including ComEd's actual costs to provide delivery services from the prior year and historical weather normalized billing determinants." She explained that ComEd's actual costs could not be known in advance, and as a result, "the formula rate mechanism relies on after-the-fact reconciliation once actual costs are known." Ms. Brinkman testified that the schedules and appendices "are necessary for the standardization and transparency called for by [modernization act]" and that "[t]his detail and transparency cannot be seen on Sch A-1 and Sch A-1 REC alone." She explained that Schedule FR A-1 and FR A-1 REC "do not contain specific cost inputs, but rather provide a high level summary of ComEd's Initial Rate Year, Reconciliation Year, and Rate Year Net Revenue Requirements." She thus concluded that "ComEd's rate formula consists of Sch A-1 and Sch A-1 REC, along with supporting Schedules and Appendices, which collectively provide the certainty, standardization, and transparency required by [modernization act]."

¶ 7    Ms. Brinkman further testified that defining the rate formula as including the full set of schedules and appendices would not "impair the Commission's ability to review ComEd's costs." She claimed that:

> "by taking complex arguments about the formula structure and protocols out of the annual debate, the detail in the tariff serves to preserve resources and reduce the workload of the parties and the Commission. The debate that should occur in annual update proceedings should center on the specific inputs; there should not be inefficient costly, and uncertain re-litigation of the formula structure and protocols themselves year-after-year, which defeats the express language of [modernization act]."

¶ 8     The Commission subsequently heard oral arguments from ComEd, which contended that "formula rate structure" should be defined as the full set of schedules and appendices, and the Commission staff, the Attorney General's office and the Citizen's Utility Board (CUB), all of which argued that the term should be defined to refer only to Schedules FR A-1 and FR A-1 REC.

¶ 9     In its order, the Commission outlined a brief history of prior orders relating to the issue of defining the formula rate structure. It noted that:

> "[a]lthough various statements have been made by the Commission regarding the scope of FRU dockets and the definition of formula rate structure, the Commission has not decisively ruled on the definition of formula rate structure as it applies to ComEd. In Docket No. 11-0721, the Commission first considered the issue of how to define the formula rate structure for ComEd. While the Commission ruled on what schedules to attach to the Order itself and which formula rate Schedules and Appendices to set forth in full in Rate DSPP and which to include as part of the compliance filing, the Commission did not rule on which Schedules and Appendices constitute the formula rate structure. The Commission ultimately directed that a rulemaking should commence, because it would 'add clarity to the reconciliations that will take place pursuant to this statute, which should provide greater clarity for utilities, ratepayers and Commission Staff.' Docket No. 11-0721, Order at 153. In doing so, the Commission stated 'that the sooner

the rulemaking takes place, the sooner all involved in the rulemaking will familiarize themselves with what formula rates will entail.' *Id.*

In ComEd's first formula rate update proceeding, similar questions were raised, but the Commission indicated that 'there will be a rulemaking in which ComEd and other interested parties are encouraged to address this and other relevant issues regarding future formula rate filings.' *Commonwealth Edison Co.*, Docket No. 12-0321, Order at 105 (Dec. 19, 2012). At this point in time, a rulemaking is no longer appropriate and, in the Interim Order in this proceeding, the Commission stated that in the second phase it would consider the definition of 'formula rate structure' as it applies to ComEd. The Commission takes a fresh look at the definition of 'formula rate structure' as it applies to ComEd."

¶ 10    After citing sections 16-108.5(c) and (d)(3)—which generally provide that changes to the "formula rate structure" may only be made in separate section 9-201 proceedings—the Commission found that the statute itself "does not define 'formula rate structure,' and because the Commission has not initiated a rulemaking to determine an industry-wide definition of 'formula rate structure,' the Commission must look at each utility individually."

¶ 11    The Commission then adopted its staff's proposed definition,

"for several reasons. First, as noted by Staff witness Ebrey, the Commission has not specified how information should appear on the supporting schedules, appendices, and workpapers that are

> merely listed in ComEd's Commission-approved tariff. In contrast, the Commission has approved the information and formatting that is to appear on Schedules FR A-1 and FR A-1 REC. The Commission cannot declare the supporting schedules, etc. to be part of the formula rate structure without having specifically approved them."

¶ 12 The Commission disagreed with ComEd's argument that its proposed definition would result in " 'specificity, standardization, or transparency' in the FRU process." It noted that "[a]lthough ComEd's proposal may lessen the number of issues in the FRU, it will not lessen the number of issues that must be decided by the Commission. ComEd's proposal results in formula rate issues being decided in two dockets instead of one."

¶ 13 The Commission continued:

> "One apparent reason for requiring two separate dockets with two separate timelines is that it could result in a year-long delay in implementing any changes. CUB points out that separating out proposed adjustments into a separate 9-201 proceeding could prevent reasonable adjustments from being made in a timely manner. Assuming Staff or an intervenor discovered an issue requiring an adjustment to a schedule or appendix immediately upon the Company's May 1, FRU filing, the 11-month 9-201 proceeding would conclude after rates for the next year have already been set. See 220 ILCS 5/9-201(b); 220 ILCS 5/16-108.5(d)(3). Thus, it could take almost two years from the time

issues are discovered until they are actually reflected in rates. ComEd's proposal could allow it to collect unreasonable rates for over a year, simply because of the technicality that a Section 9-201 proceeding and a Section 16-108.5 proceeding function on different statutory deadlines. Historically, the Commission has expedited the separate Section 9-201 proceedings and entered an order in those Section 9-201 proceedings thirty-days prior to the effective date of the new rates approved un [*sic*] the final orders in the associated FRUs. This is not an efficient use of resources for the parties or the Commission and needlessly increases costs borne by ratepayers. The Commission cannot support this outcome.

Thus, for the reasons stated herein, only changes to Schedules FR A-1 and FR A-1 REC require Commission approval through a Section 9-201 filing because those are the only schedules included in the Company's formula rate tariffs, which set forth the Commission-approved formula rate structure. Staff's position is adopted."

¶ 14   ComEd's verified application for rehearing was denied on January 14, 2015, and ComEd now seeks review of the Commission's decision in this court pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994) and section 10-201 of the Act.

¶ 15   In this appeal, ComEd argues that the Commission erroneously defined the "formula rate structure" as only Schedules FR A-1 and FR A-1 REC. ComEd asserts that:

"[t]he law and the evidence only support the conclusion that ComEd's formula rate's 'structure' should and must be defined as the two summary Schedules [referring to Schedules FR A-1 and FR A-1 REC] along with the other Schedules and Appendices expressly incorporated and referenced within the summary Schedules and in the tariff pages, as this group of Schedules and Appendices together actually contain the formula that determines ComEd's revenue requirement."

¶ 16    As stated previously, the significance of this issue is that it determines which changes to the formula rate may be made in annual rate update proceedings, and which changes must be made in separate proceedings under section 9-201 of the Act. Under section 16-108.5(c) of the Act, "[s]ubsequent changes to the performance-based formula rate structure or protocols shall be made as set forth in Section 9-201 of this Act." 220 ILCS 5/16-108.5 (West 2012). Section 16-108.5(d) provides that, "[t]he Commission shall not, however, have the authority in a proceeding under this subsection (d) [(annual formula rate updates)] to consider or order any changes to the structure or protocols of the performance-based formula rate approved pursuant to subsection (c) of this Section." 220 ILCS 5/16-5(d) (West 2012). The parties dispute what constitutes the "formula rate structure," and thus, which changes to the formula rate are required to be made in separate proceedings under section 9-201 of the Act.

¶ 17    Under section 10-201 of the Act, Commission orders are deemed *prima facie* reasonable and the burden is on the party appealing the order to overcome that presumption. 220 ILCS 5/10-201(d) (West 2012); *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2011 IL App (1st) 101776, ¶ 6 (quoting *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 398 Ill. App. 3d

510, 514 (2009)). Commission orders are subject to reversal when the Commission's findings are not supported by substantial evidence. 220 ILCS 5/10-201(e)(iv)(A) (West 2012). However, the Commission's factual findings must be upheld unless they are contrary to the manifest weight of the evidence. *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 148 Ill. 2d 348, 367 (1992); see also *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 122860, ¶ 58 (applying manifest weight of the evidence standard). Findings of fact are deemed contrary to the manifest weight of the evidence only when an opposite conclusion is clearly evident from the record. *Continental Mobile Telephone Co. v. Illinois Commerce Comm'n*, 269 Ill. App. 3d 161, 171 (1994). The appellate court may neither reevaluate the credibility or weight of the evidence nor substitute its judgment for that of the Commission. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 398 Ill. App. 3d 510, 514 (2009). As the parties challenging the Commission's order, ComEd must affirmatively demonstrate that the conclusion opposite to that adopted by the Commission is clearly evident. *Continental Mobile Telephone Co.*, 269 Ill. App. 3d at 171.

¶ 18    In light of its expertise and experience in the complex field of utility regulation, we accord deference to decisions of the Commission. *Archer-Daniels-Midland Co. v. Illinois Commerce Comm'n*, 184 Ill. 2d 391, 397 (1998); *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 398 Ill. App. 3d 510, 514 (2009).

¶ 19    Where the Commission's decision involves construction of a statute, the extent of that deference depends on whether the statute is ambiguous. When the Commission construes an unambiguous statute, the agency's interpretation is not binding on the court (*People ex rel. Madigan*, 2011 IL App (1st) 101776, ¶ 6) and the court need not defer to the agency's interpretation. Although agency interpretations of ambiguous statutory provisions are also not

binding, we give "substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute." (Internal quotation marks omitted.) *Id.* This is particularly true when the interpretation draws on the agency's expertise and experience and we will not substitute our own construction of an ambiguous statute for a reasonable interpretation adopted by the agency charged with its administration. *Quality Saw & Seal, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 776, 781 (2007) ("if reasonable readers of a statute could differ over the extent of the regulatory authority it confers, we defer to the agency's interpretation if the interpretation is defensible").

¶ 20    ComEd, however, argues that such a deferential standard of review is not appropriate, and, instead, we should review this issue *de novo* as a question of law. It contends that courts "will not defer to an agency's construction of a statute when the statute is clear and unambiguous because 'an interpretation placed upon a statute by an administrative official cannot alter its plain language.' " *Apple Canyon Lake Property Owners' Ass'n v. Illinois Commerce Comm'n*, 2013 IL App (3d) 100832, ¶ 21 (quoting *Burlington Northern, Inc. v. Department of Revenue*, 32 Ill. App. 3d 166, 177 (1975)). Although ComEd attempts to avoid the deference generally afforded to decisions of the Commission by shaping this case as one of plain language, we are unpersuaded. There is nothing inherent in the language of "formula rate structure" that conclusively indicates whether the provision refers to Schedules FR A-1 and FR A-1 REC, or to the more expansive set of schedules and appendices proposed by ComEd. Looking up the words "formula," "rate," and "structure," in the dictionary to determine their plain and ordinary meanings, does little to assist us in determining whether the term applies only to the two specific schedules, or the broader set of schedules and appendices. Instead, the term "formula rate structure" is open to more than one reasonable interpretation, and it is only by resort to

interpretative aids other than the language of the provision itself that the intent of the legislature can be discerned. See *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2015 IL App (1st) 140275, ¶¶ 22-26. In light of the foregoing, we conclude that the term "formula rate structure" is ambiguous, and we give "substantial weight and deference" to the Commission's interpretation. (Internal quotation marks omitted.) *People ex rel. Madigan*, 2011 IL App (1st) 101776, ¶ 6.

¶ 21    The Commission chose to define "formula rate structure" as only Schedules FR A-1 and FR A-1 REC for three specific reasons. First, the Commission noted that it had approved the "information and formatting that is to appear on Schedules FR A-1 and FR A-1 REC" but it had not specified how information should appear on the supporting schedules, appendices, and work papers. The Commission concluded that it could not "declare the supporting schedules, etc. to be part of the formula rate structure without having specifically approved them."

¶ 22    ComEd contends that this reasoning is "wrong" because "the two summary Schedules and the tariff pages refer to specific lines of the other Schedules and Appendices." ComEd claims that this "disproves the ruling's premise that the ICC did not approve what is in the other Schedules and Appendices." However, unlike Schedules FR A-1 and FR A-1 REC, the other schedules and appendices are listed in the Rate DSPP by number and title only, and provide no description of how information is arranged or what information is included in those documents. Moreover, even assuming that mere reference to the documents could indicate the Commission's specific approval, Schedules FR A-1 and FR A-1 REC refer to fewer than all of the other schedules, and to only one of the listed appendices. Thus, it is unclear how the reference to a portion of the schedules and appendices would indicate Commission approval of *all* of the schedules and appendices which ComEd proposes to include in the "formula rate structure"

13

definition. We find nothing sufficient to overcome the *prima facie* reasonableness of the Commission's order on this basis. 220 ILCS 5/10-201(d) (West 2012).

¶ 23    Next, the Commission believed that ComEd's proposal would result "in formula rate issues being decided in two dockets instead of one," and would not add "specificity, standardization, or transparency" to the FRU process. ComEd claims that this reasoning is erroneous because it is "not relevant. Any point about the total number of issues to be decided is a red herring, for it is an argument against the law itself, which mandates that formula rate structure and protocols changes not be handled in formula rate updates and instead be addressed in separate Article IX dockets." We disagree. Although the Act provides for two separate types of proceedings, the Commission here was tasked with interpreting the term "formula rate structure," and determining which types of changes are to be made in each type of proceeding. The Commission's acknowledgment that an expanded definition of "formula rate structure" would cause more changes to be brought in the separate section 9-201 proceedings is not "an argument against the law itself," but is merely a consideration of the potential results of the proposed interpretation, which is an appropriate way to discern the legislative intent. See *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990) ("Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other.").

¶ 24    Finally, the Commission also believed that ComEd's proposal could result in substantial delays in implementing changes, and prevent reasonable adjustments from being made in a timely manner. The Commission reasoned that if the staff or an intervenor discovered an issue requiring an adjustment to a schedule or appendix immediately upon the company's May 1 FRU filing, it could take almost two years until the adjustment is reflected in rates. The Commission

acknowledged that the section 9-201 proceedings had been expedited in the past, but determined that doing so was "not an efficient use of resources for the parties or the Commission and needlessly increases costs borne by ratepayers." ComEd claims that this reasoning is not persuasive because it is mere "speculation." It claims that it "attributes to ComEd motives that it does not have," and further notes that the Commission has substantial leeway to accelerate an article IX proceeding.

¶ 25    Although ComEd contends that speculation is not a lawful basis for a Commission decision, citing *Ameropan Oil Corp. v. Illinois Commerce Comm'n*, 298 Ill. App. 3d 341, 348 (1998), and *Allied Delivery System, Inc. v. Illinois Commerce Comm'n*, 93 Ill. App. 3d 656, 667 (1981), we find its reliance on those cases unconvincing. First, and most importantly, neither case concerns the Commission's interpretation of an ambiguous statutory provision, in which the Commission is entitled to examine the potential results of various interpretations to discern the legislative intent. See *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990). Moreover, in *Ameropan Oil Corp.*, the Commission noted that the petitioner speculated "about 'the unexpected' occurring and ma[de] irrelevant references to downed electrical lines in Canada, the Space Shuttle disaster, and the Titanic." *Ameropan Oil Corp.*, 298 Ill. App. 3d at 348. In those circumstances, this court found that "Such speculation has no place in the ICC's decision or in our review of it." *Id.* Considering the natural and probable consequences of the interpretation of a term, as the Commission did here, is a far cry from irrelevant speculation regarding "the Space Shuttle disaster, and the Titanic," which was at issue in *Ameropan Oil Corp*. *Id.* In these circumstances, we find no fault in the Commission's consideration of the potential consequences of the various proposed interpretations.

¶ 26 Although ComEd further claimed that the Commission has substantial leeway to accelerate an article IX proceeding, and has exercised such authority in the past, we note that the Commission explicitly determined that doing so was "not an efficient use of resources for the parties or the Commission and needlessly increases costs borne by ratepayers." ComEd has not provided this court with anything that would overcome the presumption of *prima facie* reasonableness of the Commission's rationale. 220 ILCS 5/10-201(d) (West 2012).

¶ 27 Finally, we also note that the definition adopted by the Commission is consistent with its recent decision interpreting the same term, formula rate structure, as it applied to Ameren. In that proceeding, the Commission held that the phrase "formula rate structure" referred only to Schedules FR A-1 and FR A-1 REC. While that order stated that it should not automatically be applied to ComEd, and while Commission decisions are not *res judicata* in later proceedings (*Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 227 (1989)), we find no reasonable rationale to interpret the phrase differently as it relates to ComEd.

¶ 28 In sum, although ComEd faults the Commission's interpretation on a number of points, we find nothing sufficient to overcome the *prima facie* reasonableness of the Commission's order. 220 ILCS 5/10-201(d) (West 2012); *Continental Mobile Telephone Co. v. Illinois Commerce Comm'n*, 269 Ill. App. 3d 161, 171 (1994). The Commission had the authority to interpret the ambiguous term "formula rate structure" contained in the Act, and ComEd has provided nothing to show that the opposite interpretation is the only possible interpretation of that term. We therefore affirm the Commission's order.

¶ 29 Affirmed.