# Illinois Official Reports

## Appellate Court

***Wade v. Illinois Commerce Comm'n*, 2017 IL App (1st) 171230**

| | |
|---|---|
| Appellate Court Caption | QUINSHELA WADE, Petitioner, v. THE ILLINOIS COMMERCE COMMISSION and COMMONWEALTH EDISON COMPANY, Respondents. |
| District & No. | First District, Sixth Division<br>Docket No. 1-17-1230 |
| Filed | December 1, 2017 |
| Decision Under Review | Petition for review of order of Illinois Commerce Commission, No. 16-0243. |
| Judgment | Affirmed in part; remanded in part with directions. |
| Counsel on Appeal | Quinshela Wade, of Chicago, petitioner *pro se*.<br><br>Thomas R. Stanton, Special Assistant Attorney General, of Chicago, for respondent Illinois Commerce Commission.<br><br>Graham & Graham LLP, of Chicago (Rebecca A. Graham, of counsel), for other respondent. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Connors and Delort concurred in the judgment and opinion.

## OPINION

¶ 1 This is an administrative review action brought by *pro se* petitioner, Quinshela Wade, against Commonwealth Edison Company (ComEd) and the Illinois Commerce Commission (Commission) (collectively the respondents). Petitioner appeals from the order of the Commission denying her motion for summary judgment and granting ComEd's motion to dismiss. For the following reasons, we affirm the decision of the Illinois Commerce Commission in part and remand in part with directions.

¶ 2 BACKGROUND

¶ 3 On June 22, 2012, in accordance with the General Assembly's policy that Illinois electric utilities should upgrade their transmission and distribution infrastructure, the Commission approved ComEd's advanced metering infrastructure (AMI) plan and ordered ComEd to deploy "smart meters" throughout its entire service territory. See 220 ILCS 5/16-108.5 (West 2016); *Commonwealth Edison Co.*, Ill. Comm. Comm'n No. 13-0285, at 3-5. (Order-Interim June 5, 2013) ("Approval of an Accelerated Meter Deployment Schedule," setting forth revised accelerated schedule); *Hawkins v. Commonwealth Edison Co.*, 2015 IL App (1st) 133678, ¶¶ 5-6. An AMI meter, or a "smart meter" as it is more commonly known, is a digital electric device that has the ability to measure a customer's electricity usage and to communicate these measurements wirelessly to the electric utility company. See 220 ILCS 5/16-108.6(a) (West 2016). Unlike traditional analog meters, smart meters enable an electric utility company, *inter alia*, to receive usage information from the customer's electric usage meter at regular intervals, eliminating the need for a meter reader to visit the customer's premises. *Id.*

¶ 4 On February 5, 2014, the Commission approved a tariff proposed by ComEd to address issues arising from customers who refused the installation of smart meters (hereinafter referred to as the tariff). *Commonwealth Edison Co.*, Ill. Comm. Comm'n No. 13-0552, at 1 (Order-Final Feb. 5, 2014) ("Submission of Rider NAM, Non AMI Metering" (tariffs filed September 20, 2013)). The Commission ultimately approved a $21.53 monthly charge applicable to customers who refused to allow ComEd to install smart meters at their premises. *Id.* at 13. The $21.53 charge was to help offset costs associated with non-AMI meters, including the cost of manually reading such meters. *Id.* The Commission found the $21.53 charge to be cost-based and likely to deter smart meter refusals. *Id.* The Commission further directed ComEd to make the $21.53 charge a separate line item on each bill and to use language to make it clear that the charge is a direct consequence of the customer's refusal to allow an AMI installation. *Commonwealth Edison Co.*, Ill. Comm. Comm'n No. 13-0552, at 1 (Order-Amendatory Mar. 19, 2014). The Commission recommended "Smart Meter Refusal Charge." *Id.*

¶ 5    When the time came to install the smart meter at petitioner's home, she refused to let ComEd do so. Petitioner's subsequent monthly bills from ComEd added the $21.53 charge, listed separately as "Smart Meter Refusal Charge." Petitioner thereupon began to deduct $21.53 from her payment to ComEd each month, and ComEd began to charge her late fees for failure to remit full payment of each monthly bill.

¶ 6    On April 4, 2016, petitioner filed a complaint against ComEd with the Commission, challenging the legality of the smart meter refusal charge. Petitioner moved for summary judgment in her favor. ComEd moved to dismiss petitioner's complaint with prejudice, arguing that the complaint failed as a matter of law because the smart meter refusal charge was mandated by the tariff.

¶ 7    On March 15, 2017, the Commission issued a final order denying petitioner's motion for summary judgment, granting ComEd's motion to dismiss, and dismissing petitioner's complaint with prejudice. In its order, the Commission stated that the tariff "requires that ComEd charge [petitioner] the $21.53 Smart Meter Refusal Charge" as "[i]t costs ComEd more to send a meter reader to a customer's home because the smart meter automatically, electronically sends the meter reading to ComEd's facilities, without the cost of the meter reader's time, the car, and the gasoline, among other costs." The Commission concluded its order by stating that it found "no basis" for ruling in petitioner's favor.

¶ 8    Petitioner filed a motion for rehearing, which was denied by the Commission. Petitioner then filed a petition for review before this court.

¶ 9                                                   ANALYSIS

¶ 10   We note that we have jurisdiction to review the final order of the Commission as petitioner filed a timely petition for review pursuant to Illinois Supreme Court Rule 335 (eff. July 1, 2017). See *Kreutzer v. Illinois Commerce Comm'n*, 404 Ill. App. 3d 791, 796 (2010) (jurisdiction is vested simply by the timely filing of a petition for review in this court as required by Rule 335).

¶ 11   No other Illinois case has addressed this issue. Accordingly, this is a matter of first impression. The question before us is whether the Commission erred in denying petitioner's motion for summary judgment and dismissing her complaint with prejudice. The primary issue in answering this question, as presented by petitioner, is whether ComEd customers have a right to refuse installation of smart meters on their premises without paying a refusal fee. Petitioner also raises a procedural due process challenge regarding the fact that there was no evidentiary hearing before the Commission and further argues that ComEd improperly charged her late fees while her complaint was pending before the Commission.

¶ 12   On review, the Commission's findings and conclusions on questions of fact are considered *prima facie* true, and its rules, regulations, and orders are considered *prima facie* reasonable. *City of Chicago v. Illinois Commerce Comm'n*, 264 Ill. App. 3d 403, 408 (1993). In light of its expertise in the complex field of utility regulation, we accord great deference to decisions of the Commission. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL App (1st) 150425, ¶ 18. Administrative rules and regulations have the force and effect of law, and must be construed under the same standards which govern the construction of statutes. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008). And the interpretation of a statute is a question of law, which we review *de novo*. *Id.*

¶ 13 We initially address petitioner's argument that her due process rights were violated when the Commission ruled on her motion for summary judgment and dismissed her complaint without holding an evidentiary hearing.

¶ 14 The due process clause of the fourteenth amendment prohibits state action that deprives any person of life, liberty, or property without due process of law. U.S. Const., amend. XIV, § 1. The fundamental requirements of due process are notice of the proceeding and an opportunity to present any objections. *People v. Cardona*, 2013 IL 114076, ¶ 15. "Due process is a flexible concept and ' "not all situations calling for procedural safeguards call for the same kind of procedure." ' " *Id.* (quoting *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 272 (2004), quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). Evidentiary hearings are not necessary upon the filing of every complaint before the Commission, as neither statute nor common sense requires it. *Chesterfield-Medora Telephone Co. v. Illinois Commerce Comm'n*, 37 Ill. 2d 324, 328 (1967).

¶ 15 The record reflects that the parties submitted briefs and exhibits as well as responses for both motions. Thus, the issues were fully briefed and presented to the Commission in a manner that allowed it to consider both motions in their entirety. It is clear that the process afforded the parties adequate procedural protections. Moreover, the Commission found that the case presented only a question of law, which could properly be resolved on a motion to dismiss. An evidentiary hearing is necessary only when a question of fact exists. *GX Chicago, LLC v. Galaxy Environmental, Inc.*, 2015 IL App (1st) 133624, ¶¶ 64-66. As it is clear that no question of fact existed, petitioner was not entitled to an evidentiary hearing. Accordingly, we reject her argument that her due process rights were violated by the failure of the Commission to hold an evidentiary hearing.

¶ 16 Turning to the crux of the issue before us, we note that petitioner makes various arguments as to why the Commission erred in its order. She presents the issues in a manner that is both repetitive and inconsistent with the supreme court rules. We admonish petitioner that the procedural rules are applicable to her, despite her *pro se* status. See *In re A.H.*, 215 Ill. App. 3d 522, 529-30 (1991) (stating that reviewing courts will not apply a more lenient standard to *pro se* parties). From our review of the record, petitioner's arguments can be summarized and addressed as follows.

¶ 17 Petitioner first argues that the smart meter refusal charge violates Illinois law. Specifically, she argues that the smart meter refusal charge conflicts with section 16-124 of the Public Utilities Act (Act). 220 ILCS 5/16-124 (West 2016).

¶ 18 Section 16-124 of the Act states that an electric utility "shall not require a residential *** customer to take additional metering or metering capability as a condition of taking delivery services." 220 ILCS 5/16-124 (West 2016). "Where two statutes are allegedly in conflict, an interpretation that allows both to stand is favored, if possible." *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 7 (2004).

¶ 19 Petitioner claims that the smart meter refusal fee conflicts with section 16-124 of the Act because it requires customers to take on *additional* metering. However, we agree with respondents that the smart meter refusal fee is not an additional metering, but is instead an upgrade pursuant to section 16-108.6 of the Act. 220 ILCS 5/16-108.6 (West 2016). ComEd's approved AMI plan *requires* it to replace the old non-AMI meters with the smart meters. ComEd's customers are not *required* to accept the smart meter but may instead choose to pay the smart meter refusal fee, which is not an additional metering fee. It is more in the form of

cost reimbursement for ComEd's meter reading process for those customers who chose to keep their old meters instead of allowing installation of the upgraded meter. Thus, the smart meter refusal fee does not conflict with section 16-124 of the Act.

¶ 20    Moreover, the smart meter refusal fee does not violate Illinois law because the tariff mandating the $21.53 refusal charge *is* Illinois law. See *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 28 (affirming that a tariff approved by the Commission is a law, not a contract, and has the force and effect of a statute). Once the tariff went into effect, both ComEd and its customers were bound by it. See *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 55 (2004) (noting that a tariff governs the relationship between the utility and the customer). As noted, the tariff clearly establishes a mandated $21.53 charge to any ComEd customer who refuses to allow the installation of a smart meter. The record demonstrates that the Commission decided on the amount of $21.53 after carefully considering the cost associated with reading the non-AMI meter. Further, the tariff was designed to deter refusal of the upgrade by ComEd's customers. The General Assembly made a policy decision to improve the delivery and measurement of electric service to the public. The enactment of the tariff, which mandated the $21.53 charge for refusal, falls squarely within the legislative policy. Thus, we find the refusal charge of $21.53 to be reasonable and within the law. Accordingly, while petitioner has a right to refuse the installation of a smart meter in her home, she cannot do so without paying the tariff-mandated refusal fee.

¶ 21    Petitioner also argues that the smart meter refusal fee violates federal law and is unconstitutional. She claims that the smart meter refusal charge violates federal law because there is no federal law mandating the use of smart meters and that any smart meter refusal charge is preempted by the supremacy clause of the United States Constitution.

¶ 22    The Federal Energy Regulatory Commission is responsible for and regulates the transmission component of ComEd's facilities in Illinois, and the Commission is responsible for and regulates the distribution component. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 130302, ¶ 18. The Federal Power Act limits federal authority "to extend only to those matters which are not subject to regulation by the States." 16 U.S.C. § 824(a) (2012).

¶ 23    Article VI of the federal constitution, known as the supremacy clause, provides that the laws of the United States "shall be the supreme Law of the Land; *** any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. Under the supremacy clause, state law is null and void if it conflicts with federal law. *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 14.

¶ 24    Petitioner is correct that there is no federal law mandating smart meters. Petitioner is incorrect, however, in claiming that the absence of federal law regarding smart meters means that the smart meter refusal fee violates federal law. In fact, federal law, pursuant to the Federal Energy Regulatory Commission and the Federal Power Act, allocates utility regulation to the states, *i.e.*, the Commission. As discussed above, state law governing regulation of ComEd's installation of the smart meter has been established. Petitioner cites no federal law that conflicts with state law on this issue. Accordingly, the smart meter refusal charge does not violate federal law and is not unconstitutional.

¶ 25    Petitioner next argues that the Commission's order is arbitrary and capricious and not supported by substantial evidence. She bases this argument on the claim that ComEd's attorney cited to improper case law and made deceptive statements, causing the Commission's

order to be "plagued" with misinformation. She further claims that the order cannot be supported by substantial evidence when the tariff refers to a "non-AMI metering charge" but not the "smart meter refusal charge" about which she filed her complaint.

¶ 26 Agency action can be set aside if the agency exercises its discretion in an arbitrary or capricious manner. *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 496-97 (1988) (citing *Dorfman v. Gerber*, 29 Ill. 2d 191, 196 (1963)). Agency action is arbitrary and capricious when the agency contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an implausible explanation contrary to agency expertise. *Hoffelt v. Illinois Department of Human Rights*, 367 Ill. App. 3d 628, 632 (2006). Agency actions must be based on substantial evidence, which is evidence that a reasoning mind would accept as sufficient to support a particular conclusion. *City of Chicago v. Illinois Commerce Comm'n*, 281 Ill. App. 3d 617, 624 (1996).

¶ 27 Petitioner's claims regarding ComEd's citation of improper case law and making deceptive statements via its attorney have no merit. Most of the false statements which she claims were made by ComEd appear to be based on petitioner's lack of understanding of the tariff or legal terms of art. Petitioner further claims that ComEd was deceptive because she did not receive ComEd's motion to dismiss until August 19, 2016, even though it was filed on May 18, 2016. Nevertheless, the record reflects that petitioner was still afforded sufficient time to fully respond to the motion to dismiss, which she did.

¶ 28 Additionally, petitioner claims that the "non-AMI metering charge" or "meter reader charge" referred to in the tariff and ComEd's motion to dismiss are inapplicable because she was complaining about receiving a "smart meter refusal charge." However, it is clear that "non-AMI metering charge" and "meter reader charge" are synonyms for the smart meter refusal charge. The tariff, which the Commission relied upon in issuing its order, shows that the Commission recommended that ComEd refer to the non-AMI metering charge as a "Smart Meter Refusal Charge" in order to make the charge clear to its customers. Thus, petitioner's argument on this point has no merit.

¶ 29 Ultimately, the Commission approved ComEd's AMI plan to deploy smart meters, which was in accordance with the General Assembly's policy. The Commission also approved the tariff requiring a $21.53 smart meter refusal fee, which we have already determined to be within the law as intended by the legislature. Petitioner admitted to refusing installation of the smart meter, which is substantial evidence that she was properly charged the smart meter refusal fee. The Commission's order is not arbitrary and capricious and is supported by substantial evidence. Thus, to the extent petitioner challenged the legality of the smart meter refusal fee, the Commission's decision is affirmed.

¶ 30 Finally, separate from the legality of the smart meter refusal fee, we address petitioner's argument that ComEd improperly charged her late fees while her complaint was pending before the Commission. We note that respondents are silent on this issue in their briefs.

¶ 31 Section 280.220(g)(1) of Title 83 of the Illinois Administrative Code provides that "[n]o late fees may be assessed on any amount in dispute while the complaint remains unresolved." 83 Ill. Adm. Code 280.220(g)(1) (2014). Petitioner does not cite to, and this court has not found, any case law interpreting this issue.

¶ 32 Petitioner raised this issue of improper late fees before the Commission in her reply to ComEd's response to her motion for summary judgment. In its final order, the Commission acknowledged that petitioner "note[d]" this issue, but the Commission did not address nor

resolve it. Petitioner again raised this issue in her motion for rehearing, which was denied by the Commission, again without any discussion or resolution of the late fees issue.

¶ 33 The record before us includes petitioner's ComEd bill issued on July 22, 2016, which does indicate that petitioner was charged late fees for the unpaid smart meter refusal fees for at least one billing cycle while she was disputing the smart meter refusal charge, in violation of section 280.220(g)(1). The record before us is insufficient as to how much ComEd improperly charged her in total late fees while her complaint was pending. This factual issue must be resolved by the Commission. See *Village of Evergreen Park v. Commonwealth Edison Co.*, 296 Ill. App. 3d 810, 813-14 (1998) (noting that jurisdiction rests exclusively with the Commission in an action for refunds or an action for overcharges by a public utility). Accordingly, we remand this issue for the Commission to conduct further proceedings to (1) determine the amount of late fees ComEd improperly charged petitioner while her complaint was pending and (2) to order ComEd to credit petitioner for the improperly assessed late fees.

¶ 34                                                    CONCLUSION

¶ 35 For the foregoing reasons, we affirm the decision of the Illinois Commerce Commission to the extent it rejected petitioner's challenge to the legality of the smart meter refusal fee. We remand for the Commission to determine the amount of improperly charged late fees assessed by petitioner and order that she receive credit from ComEd.

¶ 36 Affirmed in part; remanded in part with directions.